CANDY H. HILL *et al.*, Plaintiffs-Appellants, *v.* CATHOLIC CHARITIES, Defendant-Appellee.

First District (3rd Division)   No. 82—341

Opinion filed September 28, 1983.

Harvey L. Walner & Associates, Ltd., of Chicago (Sheldon I. Minkow, of counsel), for appellants.

Dowd and Dowd, Ltd., of Chicago (Michael E. Dowd and Philip J. McGuire, of counsel), for appellee.

JUSTICE McGILLICUDDY delivered the opinion of the court:

This is an appeal from a summary judgment entered in favor of defendant, Catholic Charities, holding that self-insurers are not required to provide uninsured motorist coverage with respect to motor vehicles covered by certificates of self-insurance.

On March 15, 1979, plaintiffs, Candy Hill and Edna Ross (Hill and Ross), were riding in a vehicle owned by defendant, Catholic Charities. The vehicle was involved in a collision with a hit-and-run driver. Hill and Ross allegedly incurred injuries and damages as a result of the collision.

Catholic Charities is an agency of the Catholic Bishop of Chicago, a corporation sole, and the vehicle in which Hill and Ross were riding was covered by a certificate of self-insurance issued to it under the provisions of the Illinois Safety Responsibility Law (Ill. Rev. Stat. 1979, ch. 95½, par. 7—502).

On April 24, 1981, Hill and Ross filed a complaint for a declaratory judgment alleging that Catholic Charities was obligated to provide them with uninsured motorist coverage pursuant to section 143a of the Illinois Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par.

755a(1)). On August 24, 1981, Catholic Charities filed a motion for summary judgment on the grounds that as a self-insurer it was not required to provide uninsured motorist coverage for those of its vehicles covered by a certificate of self-insurance. On January 27, 1982, the court granted summary judgment in favor of Catholic Charities. Hill and Ross appeal.

The sole issue before this court is whether a self-insurer is required to provide uninsured motorist coverage as a matter of law.

The Illinois Safety Responsibility Law provides in relevant part:

> "Self-insurers. Any person in whose name more than 25 motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the Secretary of State as provided in this Section.
>
> The Secretary of State may, in his discretion, upon the application of such a person, issue a certificate of self-insurance when he is satisfied that such person is possessed and will continue to be possessed of ability to pay judgment obtained against such person." (Ill. Rev. Stat. 1979, ch. 95½, par. 7—502.)

Since 1965 the Catholic Bishop of Chicago has qualified as a self-insurer under a certificate of self-insurance issued by the office of the Illinois Secretary of State.

The requirement for uninsured motorist coverage is found in the Illinois Insurance Code, which provides in pertinent part:

> "On or after July 1, 1963, *no policy* insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in Section 7—203 of The Illinois Vehicle Code for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom \*\*\*." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 73, par. 755a(1).)

Hill and Ross argue that despite the fact that self-insurers by statute are relieved from the responsibility of procuring a "policy" of insurance, this statute should apply not only to commercially insured motor vehicles but also to those vehicles which are self-insured. Although

this is a case of first impression in Illinois, other jurisdictions have considered this issue.

In *O'Sullivan v. Salvation Army* (1978), 85 Cal. App. 3d 58, 147 Cal. Rptr. 729, plaintiff was riding in a truck owned by the Salvation Army. The Salvation Army had a valid certificate of self-insurance issued under California law. When the truck was struck by an uninsured motorist, plaintiff attempted to recover against the Salvation Army under the California uninsured motorist statute. The court of appeals affirmed the trial court's dismissal of the plaintiff's complaint, stating:

> "We see no room for argument that, in enacting the financial responsibility and uninsured motorist laws, the Legislature intended a broad and comprehensive scheme to protect those using the highways from the ravages of the negligent, financially irresponsible driver of a motor vehicle. It is equally clear that the enacting of such a statutory scheme is a legislative function. The scheme is to be broadly construed in light of underlying policy consideration to insure its application as intended by the Legislature. As a corollary it is clear that broad construction by the courts in applying the statute does not entail judicial legislation in the course of determining legislative intent. The argument advanced on behalf of O'Sullivan must fail because to hold the Army financially responsible in this case would require us to exceed the limits of statutory interpretation and legislate in the area of financial responsibility." (85 Cal. App. 3d 58, 61-62, 147 Cal. Rptr. 729, 731.)

The court in *O'Sullivan* looked to an earlier decision, *Glen Falls Insurance Co. v. Consolidated Freightways* (1966), 242 Cal. App. 2d 774, 51 Cal. Rptr. 789, where an accident occurred while a self-insured's truck was being unloaded, and the defendant who was using the truck at the time of the accident attempted to force the self-insurer to provide coverage. The appellate court rejected the argument that a self-insured was required to provide coverage under the circumstances, stating:

> "Defendant Consolidated is not an insurance carrier. Nor does this case involve any motor vehicle liability policy issued and outstanding at the time of the accident. Consolidated is merely an authorized self-insurer or, to put it more exactly, a company to which the motor vehicle department has issued a certificate of self-insurance. Neither the Vehicle Code sections referring to self-insurance *** nor any other sections of said code contain any provisions that such certificate is or constitutes a policy of

motor vehicle liability insurance or that said certificate shall be deemed to incorporate or embrace provisions required in such policies ***. A certificate of self-insurance is not a motor vehicle liability *policy* of insurance. In a word, it is not an insurance policy at all and plaintiff has offered no authority that it is. As we previously explained, it is merely one of the several methods provided by law for establishing exemption from furnishing security." 242 Cal. App. 2d 774, 785, 51 Cal. Rptr. 789,797.

Other jurisdictions have reached the same resolution of the issue. In *Johnson v. Yellow Cab Co.* (1974), 456 Pa. 256, 317 A.2d 245, plaintiffs were passengers in a cab which was struck by an uninsured motorist. The Pennsylvania Supreme Court rejected the argument that the cab company was required to provide uninsured motorist coverage, stating:

"The appellants have alleged that the appellee is self-insured but they have not alleged the existence of any *liability policy of insurance.* This precludes any cause of action under the Uninsured Motorist Liability Act since that Act applies *only* when a *liability policy of insurance is delivered or issued for delivery.* If no *liability policy of insurance* exists, that Act, does not apply. *** The allegation that the appellee is self-insured negates any possible inference that a *liability policy of insurance* exists." 456 Pa. 256, 259, 317 A.2d 245, 247.

In *Mountain States Telephone & Telegraph Co. v. Aetna Casualty & Surety Co.* (1977), 116 Ariz. 225, 568 P.2d 1123, the appellate court interpreted an uninsured motorist statute very similar to the one enacted by the Illinois legislature. The issue was whether an employee, who was injured within the scope of his employment, when his employer's vehicle was involved with an uninsured motorist, could bring an action for uninsured motorist coverage against an employer who was a qualified self-insurer under Arizona law. In holding that the employer who was a self-insurer was not required to provide uninsured motorist coverage for its employees, the court stated:

"No *'policy of insurance'* is issued in a case of a corporation acting as a self-insurer; only a certificate of self-insurance. There is no contract or agreement between an insurer and an insured." 116 Ariz. 225, 227, 568 P.2d 1123, 1125.

We find the reasoning of these cases persuasive. The uninsured motorist coverage in the Illinois Insurance Code clearly states that "no policy insuring against loss resulting from liability imposed by law *** shall be renewed or delivered or issued for delivery in this State

with respect to any motor vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto *** for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles ***." Ill. Rev. Stat. 1979, ch. 73, par. 755a(1).

Clearly, this statute applies to "policies." It is equally clear that in the case of self-insurers there is no policy. A policy is a contract and like all contracts it requires two parties, an insurer and an insured. See *Patterson v. Durand Farmers Mutual Fire Insurance Co.* (1940), 303 Ill. App. 128, 24 N.E.2d 740.

Where the language used in a statute is plain and certain it must be given effect by the court and the court cannot legislate but must interpret the law as announced by the legislature. (*Roth v. Kaptowsky* (1948), 401 Ill. 424, 82 N.E.2d 661.) It is not the court's function to annex new provisions, remedy defects or supply omissions. (*American Steel Foundries v. Gordon* (1949), 404 Ill. 174, 88 N.E.2d 465.) Any extension of current statutory uninsured motorist coverage is not the duty of this court, but that of the legislature. In our opinion any other resolution of the instant matter would be tantamount to rewriting the statute, which this court may not do.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA, P.J., and RIZZI, J., concur.