Klaus DANNER, Plaintiff,

v.

The HERTZ CORPORATION, Defendant.

Civ. A. No. 82–646 MMS.

United States District Court, D. Delaware.

April 11, 1984.

---

David Roeberg, and Mark Lynch, Roeberg & Associates, P.A., Wilmington, Del., for plaintiff.

Mason E. Turner, Jr., Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for defendant.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

This action is brought by Klaus Danner, a German citizen, to recover uninsured motorist benefits from the Hertz Corporation, a Delaware corporation.[1] Danner, while driving a car leased in New York from Hertz, was seriously injured in an accident with an uninsured motorist. Before the Court is defendant's motion for summary judgment.

### Background

On August 4, 1982, Danner and a business associate, Peter Zdrenka, rented an automobile from the Hertz rental agency at John F. Kennedy Airport in New York. (Danner Deposition at 5, Doc. 11). Danner and Zdrenka were on a business trip and intended to return the vehicle to Hertz in New York on October 9, 1982.[2] (Zdrenka Deposition at 23, Doc. 11).

---

1. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332 (1982).

2. Before leaving for the United States Zdrenka reserved a car through his travel agent in West Germany. At that time Zdrenka was given a brochure which briefly described the liability

The Hertz rental agreement[3] contained two insurance options: (1) personal accident insurance, which provides coverage during the rental period for medical expenses in the event of the death of the customer or a passenger; and (2) a collision damage waiver, which eliminates the customer's responsibility for damage to the rental car. The contract was signed by Zdrenka, who declined both of these options.[4]

On the reverse side of the lease is the following clause describing the liability insurance and uninsured motorist coverage provided by Hertz:

> Lessor provides liability coverage for Customer and any operator authorized by Lessor in accordance with the standard provisions of a Basic Automobile Liability Insurance Policy, as required in the jurisdiction in which the Vehicle is operated, against liability for bodily injury, including death .... *Coverages hereunder* shall automatically conform to the basic requirements of any "No-Fault" Law which may be applicable, but *do not include "Uninsured Motorist" or supplementary "No-Fault", or other optional coverage,* and *Lessor and Customer hereby reject, to the extent permitted by law, the inclusion of any such coverage.* In the event that coverage is imposed, by operation of law, to the benefit of any person other than the Customer or any Authorized Operator described herein, then the limits of such coverage shall be the minimum requirements of the Financial Responsibility Law or other applicable statute of the

state or other jurisdiction in which the accident occurred.

(Emphasis added). This paragraph, as well as other terms and conditions, is brought to the customer's attention by virtue of bold print above the signature line: "THE VEHICLE IS RENTED UPON THE CONDITIONS SHOWN ON THIS PAGE AND UPON THE REVERSE HEREOF. CUSTOMER REPRESENTS HE HAS READ, UNDERSTANDS AND AGREES WITH THE CONDITIONS." The Hertz representative in New York did not discuss any of the terms and conditions relating to uninsured motorist coverage.

On August 13, 1982, while passing through Wilmington, Delaware, Danner and Zdrenka were involved in an accident with an uninsured motorist. Danner, the driver at the time of the accident, was seriously injured and has incurred approximately $18,000 in medical expenses. Hertz refuses to compensate plaintiff and contends that under its lease it is not required to provide coverage for accidents with uninsured motorists occurring outside New York.

**Choice of Law**

■ As a preliminary matter the Court must resolve whether New York or Delaware law governs plaintiff's right to recover uninsured motorist benefits under a non-Delaware lease. Sitting in diversity, this Court must apply Delaware choice of law principles. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In Delaware, plaintiff's cause of action would be characterized as a contract rather than tort ac-

---

coverage provided by Hertz. The "brochure" received in West Germany is apparently used by Hertz in New York as a folder for holding the actual lease agreement. (Zdrenka Deposition at 24, lines 15–23, Doc. 11). The brochure described the automobile liability coverage as follows:

> Hertz provides liability coverage for customer and any operator authorized by lessor in accordance with the standard provisions of ·a basic automobile liability insurance policy as required in the jurisdiction in which the vehicle is operated (excluding optional coverages) against liability for bodily injury including death and property damage arising from the use of a Hertz car as permitted by the Rental

Agreement. Subject to all the terms and conditions of the Rental Agreement executed by the customer, such protection is primary to any personal liability insurance carried by the customer or authorized driver. Protection conforms automatically to the requirements of any "No Fault" law applicable.

**3.** A copy of the lease agreement is attached as Exhibit A to Defendant's Appendix, Doc. 36.

**4.** Plaintiff was told by the Hertz rental agent that it was not necessary for him to sign the lease. (Danner Deposition at 21, lines 6–17).

tion. *Cf. Allstate Insurance Co. v. Spinelli,* 443 A.2d 1286 (Del.1982) (suit against insurance carrier to recover uninsured motorist benefits is akin to a contract action for purposes of determining the applicable statute of limitations). Traditionally, Delaware courts would look to the jurisdiction where the contract is formed to determine issues involving the validity and construction of a contract. *See National Union Fire Insurance Co. of Pittsburgh v. RLC Corp.,* 449 A.2d 257, 261 (Del.Super.1982); *Harris v. New York Life Insurance Co.,* 27 Del.Ch. 170, 33 A.2d 154, 157 (1943). Recently, however, the Delaware Supreme Court has indicated a move toward adopting the "most significant relationship test" set forth in section 188 of the *Restatement (Second) of Conflict of Laws. See Oliver B. Cannon and Son v. Dorr-Oliver,* 394 A.2d 1160 (Del.1978). Under either the traditional rule or the "modern" *Restatement* approach, the Court concludes that New York law applies to the substantive legal issues in this action: the place of contracting was New York; the subject matter of the contract—a leased car—was registered and principally garaged in New York; and, finally, the contract contemplated that plaintiff would return the car to New York. *See generally Restatement (Second) of Conflict of Laws* § 188 (1971). *Cf. Travelers Indemnity Co. v. Ryder Truck Rental, Inc.,* 47 N.Y.2d 139, 417 N.Y.S.2d 53, 390 N.E.2d 771 (N.Y.1979).

■ The issue of which state's law applies is complicated, however, by the terms of the lease itself. Paragraph 9 of the contract states that Hertz will provide "liability coverage ... as required in the jurisdiction in which the Vehicle is operated" and that the limits of any coverage "imposed, by operation of law ... shall be the minimum requirements of the Financial Responsibility Law or other applicable statute of the state or other jurisdiction in which the accident occurred." It would thus appear that the contract incorporates the substantive law of Delaware, the jurisdiction where the vehicle was operated when the accident occurred.

Plaintiff, in his complaint, claims that his legal right to uninsured motorist protection arises under the laws of New York. However, in his answer to Interrogatory 31, plaintiff alternatively claims protection of Delaware law, presumably by operation of the above quoted passages of the contract. Defendant, without objecting to the application of New York or Delaware law, simply contends that plaintiff has no right to coverage under either state's law. Since defendant has not argued that Delaware law does not apply and because the terms of the contract incorporate the law of the jurisdiction where the vehicle is operated, plaintiff's rights will also be analyzed under Delaware law.

## I. Plaintiff's Right to Uninsured Motorist Benefits Under New York Law

The first issue presented by defendant's motion is whether, under New York law, Hertz is obligated to pay uninsured motorist benefits for an accident occurring in Delaware. Defendant contends that plaintiff's right to uninsured motorist coverage is a simple question of contract interpretation. Relying on paragraph 9 of the rental agreement, defendant notes that it has promised liability coverage to its customers or authorized operators only "in accordance with the standard provisions of a Basic Automobile Liability Insurance Policy as required by the jurisdiction in which the vehicle is operated." Under section 167(2–a) of New York's Insurance Law, says defendant, uninsured motorist coverage for accidents occurring outside the state is not a standard term of a basic policy but instead is available only as supplemental insurance. N.Y. Insurance Law § 167(2–a) (McKinney Supp.1983).[5] Such optional cov-

---

**5.** Section 167(2–a), which sets out the mandatory terms for every insurance policy issued in New York, provides, in pertinent part:

*No policy* insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance and use of a motor vehicle by the insured *shall be issued* or delivered by any authorized insurer upon any motor vehicle then princi-

erage, defendant contends, was not included in the rental agreement. The second sentence of paragraph 9 provides that "coverages hereunder ... do not include 'Uninsured Motorist' or supplementary 'No-Fault', or other optional coverage, and Lessor and Customer hereby reject, to the extent permitted by law, the inclusion of any such coverage." According to defendant summary judgment must be granted because the lease did not and was not required to include an offer of optional uninsured motorist benefits for accidents occurring outside New York state.[6]

Plaintiff concedes that defendant did not offer optional uninsured motorist coverage in its lease. Plaintiff also concedes, as he must, that a basic automobile liability policy provides uninsured motorist protection only for accidents occurring within the state. *See Sentry Insurance Company v. Amsel*, 36 N.Y.2d 291, 367 N.Y.S.2d 480, 327 N.E.2d 635 (1975).

Plaintiff contends, however, that a rental company cannot unilaterally exclude supplementary uninsured motorist benefits. This argument focuses on the second paragraph of section 167(2–a), which gives the insured the right to opt for extra-territorial coverage:

> *Any such policy shall, at the option of the insured, also provide supplementary uninsured motorists insurance* for bodily injury, in an amount up to the bodily injury liability insurance limits of coverage provided under such policy, subject to a maximum of one hundred thousand dollars because of bodily injury to or death of one person in any one accident and, subject to such limit for one person, up to three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident. *Supplementary uninsured motorists insurance shall provide coverage, in any state* or Canadian province ....

(Emphasis added). Since an insurance company must offer supplementary uninsured motorist coverage,[7] plaintiff concludes that a rental agreement should also contain an equivalent offer. Recognizing that section 167(2–a) by its terms applies only to insurance policies issued by an "authorized insurer," plaintiff has set forth two reasons why Hertz has a duty to comply with that section. First, plaintiff contends that a rental agreement is itself a "contract of

---

pally garaged or principally used in this state *unless it contains a provision whereby the insurer agrees that it will pay to the insured ... all sums,* not exceeding a maximum amount or limit of ten thousand dollars exclusive of interest and costs, on account of injury to and all sums, not exceeding a maximum amount or limit of fifty thousand dollars exclusive of interest and costs, on account of death of one person, in any one accident, and the maximum amount or limit, subject to such limit for any one person so injured of twenty thousand dollars or so killed of one hundred thousand dollars, exclusive of interest and costs, on account of injury to, or death of, more than one person in any one accident, *which the insured or his legal representative shall be entitled to recover as damages from an owner or operator of an uninsured motor vehicle ... caused by accident occurring in this state* and arising out of the ownership, maintenance of use of such motor vehicle....

**6.** In its brief defendant made the subsidiary argument that because plaintiff was not a signatory to contract he had no right to attempt to reform the contract. At oral argument defendant conceded that for purposes of summary judgment plaintiff should be treated as if he were a party to the contract.

**7.** Although plaintiff asserts that every insurance contract must offer supplementary uninsured motorist insurance, he has offered no New York authority establishing that an insurance company has such duty under section 167(2–a). The language of the section does not appear to impose a duty on the insurance company to offer supplementary coverage but instead is drafted so as to give the insured the option of purchasing additional coverage. It is thus not self-evident that every insurance contract must offer the optional uninsured motorist insurance. Curiously, the regulations promulgated by the Superintendent of Insurance do not mandate that every insurance policy contain an offer of supplementary coverage. *See* 11 NYCRR Part 60 (1982) (minimum provisions for automobile liability insurance policies). However, for purposes of resolving defendant's motion, the Court will assume, without deciding, that a New York court would conclude that an insurance company must offer supplementary uninsured motorist coverage in its policy applications.

insurance." Alternatively, plaintiff argues that Hertz has a statutory duty, as a "self-insured," to offer optional coverage in its leases. Under either theory plaintiff would have the Court reform the rental contract to contain an offer of supplementary benefits. Plaintiff concludes that summary judgment must be denied because there is a question of fact as to whether there was an effective rejection of supplementary uninsured motorist insurance.[8]

## A. Defendant's Duty Under § 370(3) of New York's Vehicle & Traffic Law

Plaintiff contends that the statute governing defendant's insurance obligations requires a rental company to offer supplementary uninsured motorist coverage in its leases. In this case Hertz "self-insures" its motor vehicles. Thus, the Court must determine whether a self-insured lessor has a duty to offer optional benefits to its customers. This issue is a question of first impression for the courts of New York.

Defendant's insurance obligations are set forth in section 370 of New York's Vehicle and Traffic Laws. Under this statute a rental company must provide the same amount and type of liability insurance as a common carrier. *See* N.Y. Vehicle and Traffic Law § 370(3) (McKinney Supp. 1983).[9] Prior to 1962 this statute required common carriers to establish their "finan-

cial responsibility" [10] by filing either a corporate surety bond or a policy of insurance with the commissioner of motor vehicles. In 1962, the statute was amended to give a rental company the additional option of maintaining its financial security by filing a certificate of self-insurance, in lieu of actual insurance or an indemnity bond. *See id.*[11]

The duty to provide uninsured motorist coverage was first imposed on common carriers in 1971. Before 1971, a common carrier that opted to satisfy its financial responsibility through an indemnity bond, rather than through an insurance policy, could avoid the obligation of furnishing uninsured motorist coverage. *See Mackey v. Allcity Insurance*, 27 A.D.2d 728, 277 N.Y.S.2d 584 (1967). This gap in the insurance laws was filled by a 1971 amendment, which added the following:

Notwithstanding any contrary provision of this chapter, any such bond or policy of insurance shall also provide for uninsured motorists coverage in the minimal amount and in the form provided for in subdivision 2–a of section one hundred sixty-seven of the Insurance Law.

N.Y.Vehicle and Traffic Law § 370(1) (McKinney Supp.1983). Although this amendment did not reference the self-insurance provision added to the statute by the

---

**8.** Under Rule 56 summary judgment may be entered if from the pleadings and other evidentiary sources the Court concludes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. *Landtect Corp. v. State Mutual Life Assurance Co.*, 605 F.2d 75, 79 (3d Cir.1979).

**9.** Section 370(3) provides, in part:

A person, firm, association or corporation engaged in the business of renting or leasing rental vehicles to be operated upon the public highways for carrying passengers shall be subject to the provisions of this section in the same manner and to the same extent as if such person, firm, association or corporation were actually engaged in the business of carrying or transporting passengers for hire.

**10.** The phrase "financial responsibility" is part of New York's compulsory motor vehicle insurance system. Section 311 of the Vehicle and

Traffic Laws states that no vehicle can be registered in New York unless the application for registration is accompanied by "proof of financial security." Section 311 defines proof of financial security as "proof of ability to respond in damages for liability arising out of ownership, maintenance or use of a motor vehicle...." N.Y. Vehicle and Traffic Law § 311 (McKinney 1970). Ordinarily, financial responsibility is established by filing a policy of insurance approved by the commissioner of motor vehicles.

**11.** Section 316 of the Vehicle and Traffic Law gives the commissioner discretion to issue a certificate of self-insurance when he is reasonably satisfied that such person is possessed and will continue to be possessed of financial ability to respond to judgments obtained against such person, arising out of the ownership, maintenance, use or operation of any such person's motor vehicles. N.Y. Vehicle and Traffic Law § 316 (McKinney 1970).

1962 amendment to section 370(3), New York courts have held that self-insurers must provide uninsured motorist coverage. *See Allstate Insurance Company v. Shaw,* 52 N.Y.2d 818, 436 N.Y.S.2d 873, 418 N.E.2d 388 (1980). In this case, the Court must determine the extent of a rental company's uninsured motorist obligations.

Plaintiff argues that the statute must be liberally construed to further the legislative goal of providing maximum protection to drivers of leased vehicles. Turning to the statute, plaintiff notes that section 370(1) refers to uninsured motorist coverage "in the form provided for in" subdivision 2-a of section 167. Section 167(2-a), according to plaintiff, requires an authorized insurer to offer supplementary coverage to every insured. From this plaintiff concludes that the legislature also intended to require self-insured rental companies to offer optional coverage to its lessees. Plaintiff's literalistic approach to the statute, however, is not supported by case law or legislative history.

The seminal case interpreting defendant's obligations under section 370 is *Allstate Insurance Company v. Shaw,* 52 N.Y.2d 818, 436 N.Y.S.2d 873, 418 N.E.2d 388 (1980). In that case the New York Court of Appeals concluded that self-insured rental companies are not exempt from complying with the uninsured motorist obligations set forth in section 370(1). The court noted that "when the legislature authorized the filing of a certificate of self-insurance by car rental companies, it did not intend to decrease the insurance protec-

tion presently available to users of rental vehicles." 436 N.Y.S.2d at 874, 418 N.E.2d at 389. Based on this legislative history, the court concluded that uninsured motorist coverage must be provided by self-insurers. A contrary interpretation of the statute, the court explained, would be inconsistent with the legislative history. "If ... self-insurers are exempted from providing uninsured motorist coverage, their privilege of saving insurance premiums would work the precise dimunition of protection which the Legislature refused to countenance." *Id.*

*Shaw* did not present the question of whether a rental company must offer supplementary uninsured motorist coverage. The logic and policy concerns underlying that case, however, indicate that self-insurers should not be required to offer anything beyond minimum benefits. Unlike the mandatory coverage at issue in *Shaw,* the New York legislature has not shown the same "grave concern" for insuring against accidents with uninsured motorists which occur outside the state. The legislative history of section 167(2-a) makes this clear. As originally enacted, section 167(2-a) only provided that policies include uninsured motorist benefits for "accidents in this state." In *Sentry Insurance Company v. Amsel,* 36 N.Y.2d 291, 367 N.Y.S.2d 480, 327 N.E.2d 635 (N.Y.1975), the New York Court of Appeals, reading the statute literally, held that authorized insurers are not obligated to provide uninsured motorist coverage for accidents occurring outside New York state.[12]

---

**12.** In *Sentry* the plaintiff purchased an insurance policy containing a "New York Automobile Accident Indemnification Endorsement" as required by section 167(2-a). The terms of the policy stated that the endorsement "applied only to accidents which occur within the State of New York." 367 N.Y.S.2d at 480, 327 N.E.2d at 635. The insured, injured in New Jersey, argued that prior cases required the court to interpret the statute to require protection "in any state." Rejecting this contention, the court opined:

> [W]e have never detected anything in the history of subdivision 2-a of section 167 of the Insurance Law suggesting that here the Legislature intended the words "in this state" to

mean more than they obviously imply. On the contrary, in *Matter of Vanguard Ins. Co.,* 18 N.Y.2d 376, 379, 275 N.Y.S.2d 515, 517, 522, 222 N.E.2d 383, 385 we pointedly observed that this statute provides "liability for injuries inflicted by an uninsured automobile in accidents occurring *within* the State." (Emphasis in original). And noting that the accident there had occurred in South Carolina we held that (p. 380) "The Appellate Division was correct when it ruled that section 167 (subd. 2-a) did not control" "since the accident occurred outside the State." The claimant there ultimately succeeded, but only because the terms of the policy afforded more protection than the statute required. Here

In 1977, section 167(2–a) was amended. The legislature left intact that portion of the statute at issue in *Sentry*, but added a provision giving the insured the option of purchasing supplementary protection in higher limits and for accidents occurring "in any state." Although the New York legislature could have required every owner to purchase extra-territorial uninsured motorist protection, it declined to do so. Thus, in contrast with mandatory protection at issue in *Shaw*, the policy concerns underlying extra-territorial coverage are less compelling.

To determine whether a particular type of coverage is included in the certificate of self-insurance, *Shaw* teaches that a court should look to the minimum mandatory requirements imposed on a rental company that has established its financial responsibility by filing a policy of commercial insurance. The statutes and regulations governing such policies, however, do not require a rental company to purchase anything beyond basic uninsured motorist coverage. The statute simply prevents a company from filing a policy of insurance that falls below certain minimum standards. Since Hertz would not be required to purchase more than basic coverage, the result should be no different simply because Hertz self-insures. Because plaintiff's reading of the statute would impose a burden on self-insurers that was not intended by the New York courts or legislature, I hold that Hertz has no obligation under section 370 to offer optional uninsured motorist coverage in its lease agreements.[13]

## B. Defendant's Duty Under Section 167(2–a) of New York's Insurance Law

Plaintiff also contends that defendant's lease should be analyzed as if it were an actual policy of insurance. According to plaintiff since every insurance contract must contain an offer of supplementary uninsured motorist insurance, defendant's "lease" was similarly required to offer optional benefits. In support of this analysis, plaintiff cites *Guercio v. Hertz Corporation*, 40 N.Y.2d 680, 389 N.Y.S.2d 568, 358 N.E.2d 261 (N.Y.1976). That case, however, does not support plaintiff's argument.

*Guercio* was an unusual case in which the lessee could not institute a direct action against Hertz.[14] The lessee instead obtained a judgment against the driver, who operated a Hertz automobile with the lessee's permission, and then sued to collect the judgment from Hertz. The New York Court of Appeals held that Hertz's ultimate responsibility for the judgment arose because its rental contract promised liability coverage, under a certificate of self-insurance, in accordance with an *actual* policy of insurance. The court noted that since every *liability insurance policy* would have included, at the direction of section 167(2) of New York's Insurance Law, "a provision insuring the named insured against damages occasioned by the negligence of persons operating the vehicle with the express or implied consent of the insured" Hertz "in effect" became an insurer:

> Hertz, in its rental agreement with Guercio, promised to maintain a liability insurance policy or, failing that, to obtain

---

the respondent cannot succeed on that ground.
367 N.Y.S.2d at 482, 327 N.E.2d at 637.

**13.** General counsel for the Superintendent of Insurance for the State of New York has similarly concluded that section 370 of the Vehicle and Traffic Law does not require self-insured leasing companies to offer its customers supplementary uninsured motorist coverage. He takes the position that rental companies need only provide the minimum amount of insurance required by the Vehicle and Traffic Law. *See* Letter from Alan Rachlin, Office of General

Counsel, State of New York Insurance Department, to Mark Lynch, Esq. (Doc. 42).

**14.** Ordinarily, persons injured in rental cars can maintain direct actions against the lessor. *See* N.Y. Vehicle and Traffic Law § 388(1) (McKinney 1970). In *Guercio* the lessee, in a prior action, was barred from suing Hertz under the doctrine of imputed contributory negligence, a defense no longer recognized in New York. *See Kalechman v. Drew Auto Rental*, 33 N.Y.2d 397, 353 N.Y.S.2d 414, 308 N.E.2d 886 (N.Y.1974).

the same liability coverage under a bond or as a matter of self-insurance.... By the provision of the rental agreement, Hertz agreed to a like term in its "policy" of self-insurance. Hence, Hertz, in effect, became the insurer of [the driver] Frost, since Frost was operating the vehicle with the express permission of Guercio. It bears emphasis that coverage of Frost does not arise simply because Hertz was a self-insurer. Indeed, absent further provision in its rental contract, Hertz, as a self-insurer, would not be liable for damage caused by a third party, such as Frost. Here, Hertz is liable because of the additional provision in the rental agreement that any self-insurance would be subject to the same terms of the prior liability insurance policy.

389 N.Y.S.2d at 572, 358 N.E.2d at 265. Hertz was found to be an insurer of the driver only because of the terms of self-insurance that it agreed to in its rental agreement with Guercio.

■ *Guercio* provides no support for plaintiff's asserted proposition that defendant's rental agreement is a contract of insurance. *Guercio*, however, does suggest that defendant's lease agreement may give rise to a contractual duty to maintain a "policy of self-insurance" in accordance with the precise terms of section 167(2–a). In the instant case, as noted previously, Hertz's lease agreement promises no more than the "bare self-insurance" required by section 370. Unlike the contract at issue in *Guercio*, paragraph 9 of defendant's lease agrees to provide only basic coverage and specifically excludes any supplementary benefits. Moreover, in the absence of any *statutory* duty to offer extra-territorial coverage, the Court must conclude that defendant's lease does not violate any public policy of New York. I therefore hold that defendant had no statutory or contrac-

tual duty to offer supplemental uninsured motorist insurance in its lease agreement.

## II. Plaintiff's Right to Uninsured Motorist Benefits Under Delaware Law

Defendant contends that plaintiff is not entitled to uninsured motorist benefits under Delaware law. According to defendant, summary judgment must be granted because Delaware law does not require uninsured motorist coverage for defendant's vehicle. Section 3902 of Delaware's Insurance Code, 18 *Del.C.* § 3902, says defendant, applies only to insurance policies which are issued for vehicles registered or principally garaged in Delaware. In response, plaintiff argues that his right to uninsured motorist benefits under Delaware law is a matter of contract. Paragraph 9 of the lease promises liability coverage in accordance with the standard terms of a basic insurance policy as required in the jurisdiction where the vehicle is operated. According to plaintiff, uninsured motorist coverage is a standard term in a basic Delaware insurance policy unless excluded by the insured in writing. Summary judgment must be denied, says plaintiff, because defendant's attempted exclusion of uninsured motorist insurance did not comply with section 3902(a)(1).[15]

■ An analysis of plaintiff's rights to uninsured motorist benefits must begin with the contract itself. As previously noted, New York law will control how the lease is interpreted. The Court, however, has not been presented with any authority indicating how a New York court would interpret the reference in a New York lease to liability coverage "as required in the jurisdiction where the vehicle is operated." The operative term in the lease is the phrase "as required." Plaintiff would have the Court read the lease to mean that liability coverage is provided as if the driver had purchased liability insurance from Hertz in the jurisdiction where the vehicle is operat-

**15.** In his brief, plaintiff further argued that section 3902 is applicable because defendant, a Delaware corporation, was required to register its vehicles in Delaware. At oral argument, plaintiff conceded that defendant's vehicle was exempt from defendant's registration requirements. Such concession is required by the interaction of Delaware and New York's reciprocity statutes. See 21 *Del.C.* § 406; N.Y. Vehicle and Traffic Law § 250 (McKinney 1970).

ed. Such an interpretation, however, finds no support in the contract. The subject matter of the agreement is a rental vehicle and the contract language references defendant's duty to provide coverage for the driver as required in the jurisdiction where the car is operated. I conclude that a New York court would interpret the lease to mean that defendant has promised the amount and type of coverage required for a leased vehicle by the jurisdiction where the car is operated. The issue, then, is whether Delaware law requires defendant to provide uninsured motorist coverage for a car leased in New York.

 The Court agrees with defendant that Delaware law does not give plaintiff a right to recover uninsured motorist benefits.[16] Section 3902 provides:

(a) *No policy* insuring against liability arising out of the ownership, maintenance or use of any motor vehicle *shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State* unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or hit and run vehicles for bodily injury, sickness, disease, including death or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit and run motor vehicle.

(1) No such coverage shall be required in or supplemental to a policy where rejected in writing on a form furnished by the insurer describing the coverage being rejected, by an insured named therein, or upon any renewal of such policy, unless the coverage is then requested in writing by the named insured. The coverage herein required may be referred to as uninsured vehicle coverage.

18 *Del. C.* § 3902 (emphasis added). By its terms, section 3902 applies to insurance policies issued for vehicles registered or principally garaged within Delaware. Nothing in this section or any other part of Delaware's insurance or motor vehicle statute requires a New York lessor to provide uninsured motorist benefits to a driver of a vehicle leased in New York and temporarily in Delaware. In short, the Delaware statute is not applicable to the facts presented by this case.[17]

**Conclusion**

Defendant's motion for summary judgment will be granted.

---

**16.** The Court expresses no view as to whether, under the terms of defendant's lease, a Delaware lessor would be obliged under Delaware law to provide uninsured motorist coverage for an accident occurring in this or any other state. The Court also expresses no view as to whether, under Delaware law, defendant's lease would constitute an effective rejection of uninsured motorist coverage.

**17.** Since defendant's contract promises coverage only "as required" in Delaware, the Court need not reach the question of whether defendant's exclusion of uninsured motorist coverage was required to comply with the Delaware statute.