CORLYSS ROBINSON, Plaintiff-Appellant, v. THE HERTZ CORPORA-
TION, Defendant-Appellee.

Third District   No. 3—85—0315

Opinion filed January 9, 1986.

Elliff, Keyser, Oberle & Davies, P.C., of Pekin, for appellant.

Gary D. Nelson, of Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The plaintiff, Corlyss Robinson, appeals from the trial court's granting of summary judgment for the defendant, Hertz Corporation. The plaintiff leased an automobile from Hertz pursuant to a leasing agreement. While driving the leased auto, the plaintiff was involved in a collision with an unidentified driver. The plaintiff sought damages from Hertz under the leasing agreement for injuries she sustained in the collision. It was undisputed that Hertz operates under a certificate of self-insurance.

The trial court found, as a matter of law, that Hertz, being a self-insurer, was not required to provide uninsured motorist coverage. The court concluded that Hertz had also not voluntarily offered uninsured motorist coverage within the leasing agreement. Having found that

there were no genuine issues of fact and that Hertz was entitled to judgment on the law, the trial court granted Hertz' motion for summary judgment. The plaintiff now appeals.

The sole issue on appeal is whether the trial court erred in determining as a matter of law that Hertz had not voluntarily provided uninsured motorist coverage under the terms of the leasing agreement.

The language relied upon by the plaintiff is found in Paragraph 9 of the leasing agreement. Paragraph 9 provided, in relevant part,

> "Lessor provides liability coverage *** in accordance with standard provisions of the Basic Automobile Liability Insurance *Policy*, as required in the jurisdiction in which the Vehicle is operated, ***. Coverages, hereunder, shall automatically conform to the basic requirements of any 'No-fault law,' which may be applicable, but do not include 'Uninsured Motorist' or supplementary 'No-fault' or other optional coverage, and Lessor and Customer hereby reject, to the extent permitted by law, the inclusion of any such coverage." (Emphasis added.)

The plaintiff asserted that when Hertz agreed to provide liability coverage in accordance with the standard provisions of an Illinois insurance policy, it agreed to expand the scope of its coverage beyond the liability coverage required by law of self-insurers.

The statutory requirement for uninsured motorist coverage is found in section 143a of the Illinois Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 755a). The court in *Hill v. Catholic Charities* (1983), 118 Ill. App. 3d 488, 455 N.E.2d 183, held that the statutory requirement does not apply to self-insurers. The *Hill* court based its holding on two principles: (1) that section 143a applies only to "policies"; and (2) that a self-insurer does not issue a "policy."

The question in the cause at bar, then, is whether the reference in Paragraph 9 to "standard provisions of the Basic Automobile Liability Insurance *Policy*" constituted an agreement by Hertz to provide the type of coverage required by law of commercial insurers instead of the more limited coverage available to self-insurers. In short, we must decide the legal effect of the inclusion of the word "Policy," particularly in light of the subsequent language in Paragraph 9 excluding uninsured motorist coverage.

■ In interpreting a contract, the court will seek a reasonable interpretation based upon the language and provisions of the contract. (*Ebrahim v. Checker Taxi Co.* (1984), 128 Ill. App. 3d 906, 471 N.E.2d 632.) Unless it is obvious that the language in a policy is used in a technical connotation, the language is accorded the meaning which common experience imports. *State Security Insurance Co. v. Good-*

*man* (1972), 6 Ill. App. 3d 1008, 286 N.E.2d 374.

In Paragraph 9, Hertz clearly intended to limit its coverage for uninsured motorist liability. In the face of a clear expression of this intent, we cannot say that the use of the word "policy" was sufficient to negate the intent to limit coverage. To interpret Paragraph 9 in this manner would give the word "policy" a technical, legal connotation it was clearly not meant to have. Consequently, we cannot say that the trial court erred in finding that the leasing agreement did not create coverage for uninsured motorist liability.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

HEIPLE, P.J., and SCOTT, J., concur.