[No. 59190-3.    En Banc.    December 24, 1992.]

NICOLAAS W. VAN VONNO, *Individually, as Personal Representative, and as Guardian ad Litem, Respondent*, v. THE HERTZ CORPORATION, *Appellant.*

*Bullivant, Houser, Bailey, Pendergrass & Hoffman* and *R. Daniel Lindahl,* for appellant.

*Landerholm, Memovich, Lansverk & Whitesides, Inc., P.S., Jackson H. Welch,* and *Duane Lansverk,* for respondent.

DOLLIVER, J. — Defendant Hertz Corporation challenges a summary judgment holding it liable to plaintiff Nicolaas Van Vonno for greater than the statutory minimum amount of uninsured motorist (UM) coverage and for personal injury protection (PIP) benefits. Applying Oregon law, the trial court found Hertz subject to the statutes governing a "motor vehicle liability policy". We affirm.

On July 10, 1988, Van Vonno rented an automobile at the Portland, Oregon, International Airport from Hertz. Van Vonno signed a rental agreement containing the following provision:

Hertz will indemnify, hold harmless, and defend You . . . FROM AND AGAINST LIABILITY TO THIRD PARTIES, EXCLUDING ANY OF YOUR . . . FAMILY MEMBERS RELATED BY BLOOD, MARRIAGE OR ADOPTION RESIDING WITH YOU . . .. For bodily injury the limits of this protection are $25,000 for each person, $50,000 for each accident, . . . *unless other limits are shown on the Front* . . . which accident results from the use of the Car as permitted by this Agreement. This protection shall conform to the basic requirements of any applicable "No Fault" law BUT DOES NOT INCLUDE "UNINSURED MOTORIST", "UNDERINSURED MOTORISTS", SUPPLEMENTARY "NO FAULT" OR ANY OTHER OPTIONAL COVERAGE. TO THE EXTENT PERMITTED BY LAW, HERTZ AND YOU HEREBY REJECT THE INCLUSION OF ANY SUCH COVERAGE. In the event that such coverage is imposed, by operation of law, for the benefit of persons other than You or any Authorized Operators, then the limits of such coverage shall be the minimum required by the law of the jurisdiction in which the accident occurred. . . .

(Italics ours.) Rental Agreement para. 10(a); Clerk's Papers (CP), at 40. Van Vonno's employer, the Harris Corporation, had previously executed an agreement with Hertz to provide greater liability protection. The supplemental agree-

ment required Hertz to provide Harris employees protection up to $100,000 per person and $300,000 per accident.

Hertz did not purchase an insurance policy to cover its potential liability. Instead, Hertz obtained a certificate of self-insurance from the Oregon Department of Motor Vehicles by establishing it possessed the ability to pay potential judgments. *See* Or. Rev. Stat. § 806.130(2)(a) (1989).

On July 23, 1988, a collision in Clark County, Washington, involving the rented vehicle caused the deaths of Van Vonno's wife and daughter, and seriously injured Van Vonno and his son. Van Vonno sued both Hertz and William J. Krush, the driver of the other car involved in the collision.

The trial court entered a default judgment against Krush, finding him negligent and the proximate cause of the accident. The trial court also determined no liability policy covered Krush or his vehicle. The trial court had previously granted a summary judgment, holding Hertz liable to Van Vonno under the rental agreement for both uninsured motorist coverage and personal injury protection benefits. In November 1990, the trial court entered final judgment against Hertz for $312,000 plus costs. Hertz appealed to Division Two of the Court of Appeals, which certified the case for transfer to this court under RAP 4.2 and RCW 2.06.030.

Neither party disputes the absence of issues of material fact. Hence, we need only determine whether as a matter of law Van Vonno should receive uninsured motorist coverage or personal injury protection benefits or both from Hertz. CR 56(c).

■ Van Vonno and Hertz correctly assert Oregon law governs the rights and responsibilities of the parties. Washington has adopted the significant relationship approach to resolving both tort and contract choice of law issues. *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 580-82, 555 P.2d 997 (1976); *Potlatch 1 Fed. Credit Union v. Kennedy*, 76 Wn.2d 806, 809-10, 459 P.2d 32 (1969); *see* Restatement (Second) of Conflict of Laws § 188 (1971). Hertz, however, contends Washington, not Oregon, law determines the amount of

uninsured motorist coverage Van Vonno may recover. We disagree.

■ Paragraph 10(a) of the rental agreement stipulates Hertz will provide the minimum uninsured motorist protection required by the state in which the accident occurred. The rental agreement thereby creates a loophole. Under the contract, Washington law applies; however, the Washington underinsured motorist (UIM) statute, RCW 48.22.030, does not govern the rental vehicle because it was not registered or principally garaged in Washington. We will not give effect to this quasi choice-of-law provision. The quasi choice-of-law clause seeks to take unjust advantage of a state's inability to legislate with regard to vehicles registered outside its borders. In evaluating whether Hertz owes coverage and if so, how much, we will apply Oregon law.

The Oregon Vehicle Code defines the offense of "driving uninsured" as operating a motor vehicle in Oregon without either motor vehicle liability insurance or other satisfactory proof of financial responsibility. Or. Rev. Stat. (ORS) § 806-.010(1) (Supp. 1992). A person owning more than 25 vehicles may satisfy Oregon's financial responsibility requirement by qualifying as a self-insurer. A self-insurer must

> [a]gree to pay the same amounts with respect to an accident occurring while the certificate is in force that an insurer would be obligated to pay under a motor vehicle liability insurance policy, *including uninsured motorist coverage and liability coverage to at least the limits specified in ORS 806.070.*

(Italics ours.) ORS § 806.130(3). ORS § 806.070(2) specifies $25,000 per person and $50,000 per accident as the minimum required payment of a judgment.

A person may also satisfy Oregon's financial responsibility requirement by procuring a motor vehicle liability policy, which must provide uninsured motorist coverage if the policy is either issued for delivery in Oregon or issued by an insurer doing business in Oregon to cover a vehicle principally used or garaged in Oregon. ORS § 742.502(1) (Butterworths Supp. 1992) (formerly ORS § 743.789(1)). Oregon further mandates:

> The insurer issuing such policy shall offer one or more options of uninsured motorist coverage larger than the amounts prescribed to meet the requirements of ORS 806.070 up to the limits provided under the policy for motor vehicle bodily injury liability insurance. . . .

ORS § 742.502(2). The Oregon Court of Appeals has held insurers must provide their insureds an affirmative choice whether to obtain greater than the statutory minimum amount of uninsured motorist coverage. *White v. Safeco Ins. Co. of Am.*, 68 Or. App. 11, 15, 680 P.2d 700, *review denied*, 297 Or. 492 (1984). The remedy for failure to comply with ORS § 742.502(2) is reformation of the insurance contract to include uninsured motorist coverage up to the same limits as the liability protection. *Zuber v. Safeco Ins. Co. of Am.*, 96 Or. App. 596, 602, 773 P.2d 800 (1989) (citing *Blizzard v. State Farm Auto. Ins. Co.*, 86 Or. App. 56, 61, 738 P.2d 983, *review denied*, 304 Or. 149 (1987)).

Oregon's rigorous definition of the term "offer" and harsh remedy for violations of ORS § 742.502(2) comport with the purpose of the legislation: to protect innocent victims of vehicular accidents. *Cf. Rhone v. Louis*, 282 Or. 693, 697, 580 P.2d 549 (1978). Washington similarly requires insurers to comply strictly with the UM/UIM statutes. In *Finney v. Farmers Ins. Co.*, 92 Wn.2d 748, 600 P.2d 1272 (1979), this court observed:

> RCW 48.22.030 is to be liberally construed in order to provide broad protection against financially irresponsible motorists. The purpose of the statute is to allow an injured party to recover those damages which would have been received had the responsible party maintained liability insurance.

(Citations omitted.) *Finney*, 92 Wn.2d at 751. Keeping in mind the strong policy in favor of individuals injured by uninsured motorists, we now turn to the arguments of the parties.

Van Vonno contends Hertz owes uninsured motorist coverage up to the $300,000 per accident liability limit specified in the supplemental agreement between Hertz and Van Vonno's employer. Van Vonno argues Hertz issued a "motor

vehicle liability policy" when Hertz executed the rental agreement in which it agreed to indemnify and hold Van Vonno harmless from liability to third parties. According to Van Vonno, Hertz did not "offer" uninsured motorist coverage as mandated by Oregon law, and the court should therefore reform the rental agreement to provide UM protection of up to $100,000 per person and $300,000 per accident.

Hertz reads ORS § 742.502(2) as applying only to an "insurer" issuing a "motor vehicle liability policy" and argues it is not an insurer but rather a "self-insurer", subject only to the $25,000 per person, $50,000 per accident limits prescribed by ORS § 806.130. According to Hertz, agreeing to indemnify a nonemployee does not convert a self-insurer into an insurer. Hertz asserts Oregon law mandated the inclusion of the indemnity provisions and thus, Van Vonno did not bargain for, nor purchase, the liability protection. As a result, Hertz concludes the rental agreement did not constitute a motor vehicle liability policy, and ORS § 742.502 did not require Hertz to offer Van Vonno more than the minimum uninsured motorist coverage.

Neither Oregon nor Washington has addressed the precise issue presented in this case: whether a self-insured rental car company must offer uninsured motorist coverage to a lessee as part of the liability protection contained in a rental agreement. A number of other states, however, have confronted identical or related issues. The weight of this authority supports Van Vonno's position.

Every state has enacted statutes governing liability for injuries arising from the operation of a motor vehicle. Many states have schemes similar to Oregon's, requiring proof of financial responsibility and allowing certain individuals to act as self-insurers. Like Oregon, some states mandate that liability policies include a minimum amount of uninsured motorist coverage. Oregon also requires an insured under a liability policy receive the option of accepting or rejecting uninsured motorist protection up to liability limits. Washington's UM/UIM legislation parallels Oregon's, except Washington requires UM/UIM coverage up to liability limits

unless the insured rejects such coverage in writing. RCW 48.22.030(3).

While a few state courts have held a self-insurer need not provide uninsured motorist protection, *e.g.*, *O'Sullivan v. Salvation Army*, 85 Cal. App. 3d 58, 147 Cal. Rptr. 729 (1978); *Hill v. Catholic Charities*, 118 Ill. App. 3d 488, 455 N.E.2d 183 (1983); *Grange Mut. Cas. Co. v. Refiners Transp. & Terminal Corp.*, 21 Ohio St. 3d 47, 487 N.E.2d 310 (1986), these cases generally involve vehicles driven by an agent or employee of the self-insurer, and can be distinguished on that basis from the case before us.

For example, *O'Sullivan* involved an individual injured in a collision with an uninsured motorist. The individual had been a passenger in a vehicle owned by the Salvation Army and operated by one of its employees. The California Court of Appeal for the Second District reasoned a certificate of self-insurance does not constitute a "policy of liability insurance"; it merely evidences an ability to pay for damages. *O'Sullivan*, 85 Cal. App. 3d at 63. Therefore, Cal. Ins. Code § 11580.2(a) (West Supp. 1992), requiring that every policy of liability insurance contain a minimum level of UM coverage, did not apply to the Salvation Army.

Unlike Hertz, the Salvation Army did not lease its vehicle to a third person under a contract containing an indemnification provision. States confronting cases in which a self-insurer leased a vehicle to a third person almost uniformly require the self-insurer to offer uninsured motorist coverage. *E.g.*, *Twyman v. Robinson*, 255 Ga. 711, 342 S.E.2d 313 (1986); *Trobaugh v. Migliore*, 597 So. 2d 494 (La. Ct. App. 1992); *Hartford Ins. Co. v. Hertz Corp.*, 410 Mass. 279, 572 N.E.2d 1 (1991). Courts imposing a duty on the self-insurer generally view a vehicle rental agreement as a contract containing insurance provisions, thereby constituting a motor vehicle liability policy. *E.g.*, *Trobaugh*, 597 So. 2d at 496. By issuing a liability policy, the rental car company incurs a duty to offer the lessee an opportunity to accept or reject uninsured motorist coverage. *E.g.*, *Trobaugh*, 597 So.

2d at 496; *see* La. Rev. Stat. Ann. § 22:1406(D) (1978 & Supp. 1992).

The same result follows when a rental car company procures insurance to cover its vehicles, instead of acting as a self-insurer. In *Moon v. Guarantee Ins. Co.*, 764 P.2d 1331 (Okla. 1988), the Oklahoma Supreme Court held a rental car company functions as an agent of its insurer when it resells a portion of its liability insurance as part of each car rental transaction. *Moon*, 764 P.2d at 1333; *accord, Quittem v. National Car Rental Sys., Inc.*, 582 So. 2d 1337, 1340 (La. Ct. App. 1991) ("If the [rental car] agency contracts with a third party to provide the insurance coverage, the agency then effectively 'sells' a portion of that policy to each of its lessees."). The *Moon* court concluded Oklahoma law imposes a duty on rental car agencies to offer their lessees the opportunity to accept or reject uninsured motorist coverage. *Moon*, 764 P.2d at 1333; *see also* Okla. Stat. Ann. tit. 36, § 3636(A), (B), (F) (West Supp. 1993).

Hertz does not contest the reasoning of the *Trobaugh* and *Moon* line of cases. Instead, it offers two cases in support of its position: *Danner v. Hertz Corp.*, 584 F. Supp. 293 (D. Del. 1984); *Robinson v. Hertz Corp.*, 140 Ill. App. 3d 687, 489 N.E.2d 332 (1986). Neither case advances Hertz's argument.

*Danner* does not represent persuasive authority because the case involved New York law, which differs substantially from Oregon law. Unlike Oregon, New York does not require vehicle owners to purchase UM protection for accidents occurring outside the state. *Danner*, 584 F. Supp. at 300; *see* N.Y. Ins. Law § 3420(f) (Consol. 1985) (formerly § 167(2-a)). The plaintiff in *Danner* rented a vehicle from Hertz in New York and had an accident in Delaware with an uninsured motorist. Thus, Hertz had no statutory duty to provide UM coverage. *Danner*, 584 F. Supp. at 301; *cf. Danner*, 584 F. Supp. at 297 n.7 (N.Y. Ins. Law § 3420(f) does not even require insurers to "offer" extraterritorial UM protection).

Likewise, *Robinson* does not support Hertz's contention because the case addressed only the interpretation of the

contract between the lessor and lessee. *See Robinson*, 140 Ill. App. 3d at 688 ("The sole issue on appeal is whether the trial court erred in determining as a matter of law that Hertz had not voluntarily provided uninsured motorist coverage under the terms of the leasing agreement."). The *Robinson* court did not examine the statutory obligations of a self-insured rental car company, relying on *Hill v. Catholic Charities*, 118 Ill. App. 3d 488, 455 N.E.2d 183 (1983), which exempted self-insurers from the UM statute but did not involve a rental car transaction.

Hertz's argument faces other obstacles. Hertz contends this court may decide whether Hertz had a duty to offer greater UM coverage simply by characterizing Hertz as either a self-insurer or an insurer. Hertz, however, ignores its ability to be a self-insurer in one context and an insurer in another. When Hertz pays judgments rendered against it for the negligence of an agent or employee, Hertz acts as a self-insurer. On the other hand, Hertz acts as an insurer when it agrees to assume the liabilities of a third person for whose actions Hertz would not otherwise be responsible. *See Webster's Third New International Dictionary* 1173 (1971) (insurance: "coverage by contract whereby for a stipulated consideration one party undertakes to indemnify or guarantee another against loss by a specified contingency or peril"); *cf. Cincinnati Ins. Co. v. Hertz Corp.*, 776 F. Supp. 1235, 1240 (S.D. Ohio 1991) ("[B]y offering liability insurance, Hertz has demonstrated a willingness to engage in the business of entering into contracts of insurance. . . . As such, Defendant's contention that they cannot be considered an 'insurer' is not well taken." (Citation omitted.)).

Hertz's assertion that either ORS § 742.502 or ORS § 806.130 controls, but not both, simply lacks merit. ORS § 742.502(1) reads:

> Every motor vehicle liability policy insuring against loss suffered by any natural person resulting from liability imposed by law . . . shall provide uninsured motorist coverage . . ..

The applicability of the statute does not depend on whether an entity acts as a self-insurer; rather it hinges on whether

the parties formed a motor vehicle liability policy. Thus, a self-insured entity that issues a motor vehicle liability policy must comply with both ORS § 742.502 and ORS § 806.130.

Hertz claims it did not issue a motor vehicle liability policy because no sale occurred. According to Hertz, Oregon law compelled it to provide liability protection, and therefore Van Vonno did not affirmatively choose to purchase a policy. The statute, however, does not require an exchange of consideration. ORS § 742.502 specifically uses the terms "issue" and "deliver", rather than the word "sell". In addition, although Van Vonno may not have separately purchased the liability coverage, Van Vonno still paid indirectly for the coverage, through higher rental rates. *Quittem*, 582 So. 2d at 1340 ("[T]he fact is that the lessee is charged for insurance coverage whether that charge is detailed separately or not.").

Hertz argues the parties did not bargain for the liability protection. We disagree. Van Vonno's employer specifically negotiated with Hertz to obtain the higher liability limits of $100,000 per person and $300,000 per accident. Oregon law mandates motor vehicle liability policies provide, at a minimum, liability protection of $25,000 per person and $50,000 per accident. ORS § 806.060(2)(a); ORS § 806.070(2); ORS § 806.080(2). Hertz chose to afford Van Vonno and other Harris employees greater than the statutorily required liability coverage, and Hertz presumably benefited from the bargain. If Hertz had not formed the supplemental agreement with Harris, the parties would have no dispute; Hertz would have owed $50,000 per accident regardless of whether ORS § 742.502 or ORS § 806.130 applied. Thus, Hertz chose to assume the risk currently the subject of dispute.

We hold Hertz liable to Van Vonno as a matter of law for uninsured motorist coverage of up to $100,000 per person and $300,000 per accident. The rental agreement, in which Hertz contracted to indemnify Van Vonno, constitutes a motor vehicle liability policy. *E.g.*, *Trobaugh*, 597 So. 2d at 496. By failing to offer Van Vonno an affirmative choice regarding the amount of uninsured motorist coverage, Hertz violated the duty imposed by ORS § 742.502. We therefore

reform the rental agreement to reflect UM protection up to liability limits. *Zuber v. Safeco Ins. Co. of Am.*, 96 Or. App. 596, 773 P.2d 800 (1989).

■ In addition, we find that holding Hertz liable for uninsured motorist coverage up to $300,000 per accident does not violate notions of fundamental fairness. The financial responsibility laws exist to protect persons injured in automobile collisions. Public policy dictates that individuals may not circumvent the legislative scheme by declaring themselves self-insurers. The statutory design merely requires Hertz to offer its lessees an opportunity to accept or reject greater uninsured motorist coverage. If a lessee affirmatively rejects higher coverage, Hertz has fulfilled its statutory obligation. On the other hand, if the lessee accepts UM coverage up to liability limits, Hertz may charge an additional fee. Thus, requiring self-insured rental car companies to comply with ORS § 742.502(2) does not impose an undue financial burden.

■ Hertz also disputes the award of personal injury protection benefits to Van Vonno. The Oregon Insurance Code reads:

> Every motor vehicle liability policy issued for delivery in this state that covers any *private passenger motor vehicle* shall provide personal injury protection benefits to the person insured thereunder, members of that person's family residing in the same household, passengers occupying the insured motor vehicle and pedestrians struck by the insured motor vehicle. . . .

(Italics ours.) ORS § 742.520(1) (Butterworths Supp. 1992). Hertz contends, as a self-insurer, it did not issue a motor vehicle liability policy and need not comply with ORS § 742.520(1). As discussed earlier, Hertz's rental agreement functions as a motor vehicle liability policy. Thus, Hertz's argument lacks merit. Hertz also asserts the rental vehicle does not constitute a "[p]rivate passenger motor vehicle" because the rental car acts as a "public or livery conveyance". *See* ORS § 742.520(7)(e) (formerly ORS § 743.800). Hertz raises this argument for the first time on appeal, and

therefore, we will not consider it. *See, e.g., Herberg v. Swartz*, 89 Wn.2d 916, 925, 578 P.2d 17 (1978) ("An issue, theory or argument not presented at trial will not be considered on appeal."). We hold, as a matter of law, Hertz owes Van Vonno PIP benefits in the amount awarded by the trial court. The trial court's grant of summary judgment in favor of Van Vonno is hereby affirmed.

DORE, C.J., and UTTER, BRACHTENBACH, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

Reconsideration denied February 26, 1993.