Argued and submitted October 7, 1983, reversed and remanded May 2, reconsideration denied June 15, petition for review denied July 24, 1984 (297 Or 492)

## WHITE et al,
*Appellants,*

*v.*

## SAFECO INSURANCE COMPANY OF AMERICA,
*Respondent.*

(A8107-04613; CA A26499)

680 P2d 700

R. V. Cook, Gresham, argued the cause and filed the briefs for appellants.

Carrell F. Bradley, Hillsboro, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

On January 7, 1980, plaintiff Alfred White was injured in an automobile accident as a result of the negligence of an uninsured motorist. Although plaintiffs' insurance policy contained $500,000 aggregate single limit liability coverage for bodily injury, it provided only the statutorily required minimum limits of $15,000 for each person and $30,000 for each accident as uninsured motorist coverage. ORS 743.786(1) and ORS 486.011(7)(a) and (b). Plaintiffs sued defendants Safeco and their agents, seeking, *inter alia*,[1] a declaratory ruling that defendants had an affirmative statutory duty to offer them uninsured motorist coverage up to the limits of their liability coverage. On Safeco's motion, the trial court struck from plaintiffs' complaint the allegations of an affirmative duty. Plaintiffs declined to plead further, and the trial court then entered judgment in Safeco's favor.[2] We reverse.

On the date of plaintiffs' automobile accident, January 7, 1980, ORS 743.789 provided:

"(1) Every motor vehicle liability policy insuring against loss suffered by any natural person resulting from liability imposed by law for bodily injury or death arising out of the ownership, maintenance or use of a motor vehicle shall provide uninsured motorist coverage therein or by endorsement thereon when such policy is either:

"(a) Issued for delivery in this state; or

"(b) Issued or delivered by an insurer doing business in this state with respect to any motor vehicle then principally used or principally garaged in this area.

"(2) *The insurer issuing such policy shall offer one or more options of uninsured motorist coverage larger than the amounts prescribed to meet the requirements of ORS chapter 486, up to the limits provided under the policy for motor*

---

[1] Plaintiffs' second claim sought damages against Safeco for its negligence in failing to advise plaintiffs of the availability of higher uninsured motorist coverage. In plaintiffs' third claim, plaintiff wife sought damages from Safeco because she had suffered mental anguish as a result of the accident and for loss of consortium. In plaintiffs' fourth and fifth claims plaintiffs sought damages from the other defendants for their negligence in failing to advise plaintiffs of the availability of higher uninsured motorist coverage.

[2] This appeal is from a final judgment in favor of defendant Safeco only. The trial court determined that there was no just reason for delay, pursuant to ORCP 67B.

*vehicle bodily injury liability insurance.*"[3] (Emphasis supplied.)

The issue is whether the emphasized language requires some act of the insurer affirmatively to advise its insureds of the availability of the additional coverage or merely requires the insurer passively to have available uninsured motorist coverage limits in excess of the statutory minimum limits of liability coverage required.

■■ In order to construe ORS 743.789(2), we attempt to ascertain the intent of the legislature, and our threshold inquiry is the language of the statute itself. *Whipple v. Howser,* 291 Or 475, 479, 632 P2d 782 (1981). "Offer" has been defined to mean: "To bring to or before; to present for acceptance or rejection; to hold out or to proffer; to make a proposal to; to exhibit something that may be taken or received or not." Black's Law Dictionary 1233 (4th ed 1968). Requiring insurers to "present for acceptance or rejection" uninsured motorist coverage up to the limits of an insured's liability coverage, suits the purpose of ORS 743.789, which is to require that insurers "shall provide" uninsured motorist coverage for any policy issued for delivery in this state.

■ Defendants argue that the legislature's failure to make clear its intention to require insurance companies affirmatively to offer to its insureds uninsured motorist coverage up to the limits of their liability coverage demonstrates that the legislative intent was merely to require the companies to "make available" additional uninsured motorist coverage. In the 1975 Legislative Assembly, HB 2997, which was to become Or Laws 1975, ch 390, *amending* ORS 743.789, in its original form employed the language "make available." The House Committee On Labor/Business Affairs changed the language from "make available" to "shall offer." Additionally, the original bill only required insurers to offer uninsured

---

[3] ORS 743.789 was amended in 1981 to require that offers of uninsured motorist coverage larger than the amounts required by ORS 486.011(7) "* * * include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insurer's uninsured motorist coverage." ORS 743.789(2).

motorists coverage in multiple limits of $50,000 and $100,000. The Senate eliminated that restriction and required insurers to offer coverage "up to the liability limits provided for under the policy for motor vehicle bodily injury liability insurance." These changes demonstrate the legislature's intent to provide Oregon drivers an affirmative choice whether to obtain more than minimum protection against uninsured motorists.

■      We further note that, with respect to personal injury protection benefits, the legislature has chosen to use different language. ORS 743.820 provides: "Nothing in ORS 743.800 to 743.835 is intended to prevent an insurer from providing more favorable benefits than the personal injury protection benefits described in ORS 743.800, 743.805 and 743.815." Had the legislature intended only that insurers make available additional uninsured motorist coverage, it presumably would have done so expressly, as it did with respect to personal injury protection benefits. We conclude that the words "shall offer" impose on insurers an affirmative duty to communicate to their insureds the availability of one or more options of uninsured motorist coverage up to the limits provided under the liability coverage in their policies.

■      Plaintiffs also assign as error the trial court's rulings that plaintiff wife did not have a claim for loss of consortium and could not recover for her mental anguish under the uninsured motorist coverage provided pursuant to ORS 743.786 *et seq.* ORS 743.792(1)(a) requires uninsured motorist coverage to provide:

> "The insurer will pay all sums which the insured, his heirs or his legal representative, shall be legally entitled to recover as general and special damages from the owner or operator of an uninsured vehicle because of bodily injury sustained by the insured caused by accident and arising out of the ownership, maintenance or use of such uninsured vehicle. * * *"

Although plaintiff wife is an insured, neither her claim for loss of consortium or her claim for mental anguish results from any bodily injury she has sustained. If we view husband as "the insured," the claim fails because wife's claim for loss of consortium is independent of husband's right to recover for

bodily injury. *See Wolff v. DuPuis,* 233 Or 317, 322, 378 P2d 707 (1963). The trial court properly struck those claims.[4]

Reversed and remanded.

---

[4] Our conclusion that Safeco had an affirmative duty to advise plaintiff of the availability of additional uninsured motorist coverage affects the claims of plaintiff husband only.