Argued and submitted May 18, affirmed June 24, reconsideration denied August 14, petition for review denied September 9, 1987 (304 Or 149)

BLIZZARD et al,
*Respondents,*

*v.*

STATE FARM AUTOMOBILE
INSURANCE COMPANY,
*Appellant.*

(A8411-06536; CA A40731)

738 P2d 983

Jas. J. Adams, Portland, argued the cause for appellant. With him on the briefs was Acker, Underwood & Smith, Portland.

J. Randolph Pickett, Portland, argued the cause and filed the brief for respondents.

Before Warden, Presiding Judge, and Van Hoomissen and Rossman, Judges.

WARDEN, P. J.

## WARDEN, P. J.

■ Defendant State Farm Mutual Automobile Insurance Company appeals from a judgment in which the trial court reformed an insurance policy issued by defendant, covering plaintiffs' 1978 Cadillac Eldorado, to provide underinsured motorist (UIM) coverage equal to the limits of the liability coverage.[1] The court based its decision on its finding that defendant had failed to offer plaintiffs UIM coverage on that car equal to the liability limits. It held that ORS 743.789(2), as construed in *White v. SAFECO Insurance Co.,* 68 Or App 11, 680 P2d 700, *rev den* 297 Or 492 (1984), requires defendant to make the offer. We affirm.

In May, 1981, plaintiffs insured the Eldorado, as they had previously insured other cars, with defendant. Defendant's custom is to issue a separate policy on each car, rather than one policy covering all the cars in a particular household. Defendant's agent's secretary prepared the application for the policy on the Eldorado, checking a box for the statutory minimum level of uninsured motorist coverage rather than a separate box for coverage equal to the liability limits, which were higher. Neither she nor the agent discussed the matter with plaintiffs. At the time, few State Farm policyholders had uninsured motorist coverage greater than the minimum.

Later in 1981, the legislature amended ORS 743.789 to require insurers to offer *under*insured, as well as *un*insured, motorist coverage to the limits of their policyholders' liability coverages. The change became effective with policies made, renewed or extended on or after January 1, 1982. Or Laws 1981, ch 586, §§ 1-3.[2] In order to comply with the law, defen-

---

[1] Plaintiffs' complaint sought a declaratory judgment that defendant had failed to advise them of their right to UIM coverage and that the UIM limits under the policy should therefore be the higher ones. The trial court held that the underlying nature of plaintiffs' claim was for reformation, and defendant does not challenge that holding on appeal. However, that does necessarily mean that all the defenses available in a claim for reformation based on such grounds as misrepresentation or mutual mistake are available here. Reformation of the contract in this case is the appropriate remedy for defendant's failure to comply with a statutory duty. Equitable defenses are irrelevant.

[2] The 1985 legislature amended ORS 743.789 to conform to the recodification of the Vehicle Code. Or Laws 1985, ch 338, § 966. The statute remains the same in substance as it was at the times involved in this case. Subsection (2) presently provides:

"The insurer issuing such policies shall offer one or more options of uninsured

dant extended its uninsured motorist coverage to include UIM coverage and prepared a small pamphlet explaining UIM coverage. It included the pamphlet with all renewal notices for policies that became due from January 1, 1982, through June 30, 1982,[3] and which contained uninsured and UIM coverage less than the liability limits. It also placed the following statement on the portion of the bill which the customer was to return with the payment:

"NEW STATE LAW BROADENS UNINSURED MOTORIST COVERAGE, COVERAGE U. SEE INSERT FOR DETAILS.

"IF YOU WOULD LIKE COVERAGE U LIMITS EQUAL TO YOUR BODILY INJURY LIABILITY LIMITS OF _____ CHECK HERE . . . . YOUR NEW PREMIUM IS $_____.

"IF DIFFERENT LIMITS ARE DESIRED, PLEASE CONTACT YOUR AGENT."

In November, 1981, plaintiffs put the Eldorado in storage for the winter. At their request, defendant suspended all coverages except comprehensive. The next regular premium date was May 1, 1982; the bill for that payment showed comprehensive as the only coverage and no premium due, because of a credit from a previous payment. On May 22, 1982, plaintiffs took the Eldorado out of storage and requested reinstatement of full coverage. The bill for those coverages was payable on July 7, 1982, which was after defendant had discontinued including the UIM offer on premium notices. Although plaintiffs had received offers of additional UIM coverage for two other cars and accepted it on one, they deny that they received an offer on the Eldorado. On review of the entire record, we find the evidence to be clear and convincing that

---

motorist coverage larger than the amounts prescribed to meet the requirements of ORS 806.070 up to the limits provided under the policy for motor vehicle bodily injury liability insurance. Offers of uninsured motorist coverage larger than the amounts required by ORS 806.070 shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage. Underinsurance benefits shall be equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies."

[3] Defendant's automobile insurance policies come due twice a year. It bills them on a six-month cycle.

defendant did not offer UIM coverage on the Eldorado equal to the liability limits on that car.[4]

At the time of the May 1, 1982, renewal,[5] there was no liability coverage on the Eldorado. Defendant's procedures apparently did not include making an offer of UIM coverage when a vehicle had *no* liability coverage. ORS 743.789 did not require that it do so. There could be no indication that there was a disparity between the liability and UIM limits, nor could defendant have determined how much the premium for the offered coverage should be. The July 7, 1982, premium notice came when defendant was no longer including offers of UIM coverage with premium notices. Although defendant's method of complying with its statutory obligation appears well-designed, the reinstatement of full coverage for the Eldorado simply slipped between the cracks.

In 1983, plaintiff Joan Blizzard was involved in an accident while driving the Eldorado. The other driver's liability coverage was less than plaintiffs' on the Eldorado and less than Joan's claim for damages. It was, however, equal to the uninsured motorist coverage on the Eldorado, and defendant therefore denied any liability for her injuries. That denial led to this action.

In *White v. SAFECO Insurance Co., supra,* we held that ORS 743.789(2) imposes an affirmative duty on insurers to "communicate to their insureds the availability of one or more options of uninsured motorist coverage up to the limits provided under the liability coverage in their policies." 68 Or App at 15.[6] We noted that the legislature explicity required companies to "offer" such coverage, rather than simply make it available, and that "offer" implies to " 'present for acceptance or rejection[.]' " 68 Or App at 14. The statements that defendant placed on its premium notices were explicit offers

---

[4] We need not determine whether plaintiffs' burden was to prove their case by clear and convincing evidence; if it was, they have met it.

[5] Nothing in the original application, in May, 1981, constituted an offer of the kind that the statute contemplates.

[6] The claim in *White v. SAFECO Insurance Co., supra,* arose before the legislature extended the statute to require underinsured as well as uninsured motorist coverage. The insurer's duty under the statute, however, is the same with respect to both coverages.

of the kind that the legislature contemplated. Those statements on notices for plaintiffs' other cars made them aware that UIM coverage was available. However, defendant did not present a specific offer which plaintiffs could accept or reject on the insurance for the Eldorado. As a result, it did not comply with the statute as to that car.

Defendant argues that plaintiffs did not show that they would have accepted the offer if defendant had made it. The trial court found that the evidence on that point was equivocal. The Minnesota Supreme Court, confronted with the same argument, said that

> "when the trial court determines that the statutorily mandated offer of insurance has not been made, that coverage is implied in law as included in the insured's policy at the time of the accident. * * * The insurer has no right to a jury trial to determine whether the insured would have purchased the coverage. Not only would that determination be too speculative, it would allow insurers to circumvent the intent of the legislature." *Kuchenmeister v. Ill. Farmers Ins. Co.,* 310 NW2d 86, 88 (Minn 1981).

*See also Tucker v. Country Mutual Insurance Company,* 125 Ill App 3d 329, 337, 465 NE2d 956 (1984). We agree with the Minnesota and Illinois courts that the appropriate remedy for defendant's failure to comply with its statutory duty is to read into the insurance contract the coverage which defendant should have offered. That is what the trial court did, and we affirm its decision.

Affirmed.