Argued and submitted March 15, affirmed May 17, 1989

ZUBER,
*Respondent,*

*v.*

SAFECO INSURANCE COMPANY OF AMERICA,
*Appellant.*

(A8710-06401; CA A49999)

773 P2d 800

Carrell F. Bradley, Hillsboro, argued the cause and filed the briefs for appellant.

David Zarosinski, Portland, argued the cause for respondent. On the brief were Jeffrey V. Hill, Bradford H. Lamb and Zarosinski & Hill, Portland.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

GRABER, P. J.

## GRABER, P. J.

Defendant insurer appeals from a judgment entered against it after a trial to the court on stipulated facts in this action on an automobile insurance contract. The issue is whether defendant offered uninsured motorist coverage to plaintiff's father by a method that complies with ORS 743.789(2). We affirm.

Defendant issued an automobile insurance policy to plaintiff's father in 1977. The policy was renewed every six months and was in full force on the date of loss, August 20, 1984. It provided for $25,000 in uninsured motorist coverage, which was the minimum amount required by statute. ORS 743.789(1); ORS 806.070. The liability coverage had limits of $100,000 per person and $300,000 per accident.

In early April, 1980, the insurance agent sent plaintiff's father a letter that read, in part:

> "On your auto insurance you may now increase your uninsured motorist coverage limits up to the same limits you carry on your bodily injury coverage. The cost for this additional protection is just a few dollars. We can also provide information on underinsured motorist coverage. This provides that if a person liable for injuries to you or your family carries too little insurance to pay your costs, the underinsured motorist coverage can pay the difference, up to your limits."

In early July, 1982, defendant sent a notice to plaintiff's father that read, in part:

> "Oregon law requires that Uninsured Motorists Coverage be offered in amounts greater than the minimum limits ($15,000 each person, $30,000 each accident). Further, it requires that Underinsured Motorists Coverage be included if you select limits higher than the minimum.
>
> "With Uninsured Motorists Coverage you are protected, up to your limits, if you are involved in an accident caused by an uninsured or 'hit and run' driver. If a person who has insurance causes an accident resulting in injuries to you or your family which are more costly than the coverage maximums of his policy, Underinsured Motorists pays the difference between his Bodily Injury limits and the cost of the injuries. In no event, however, may you recover more than your limits less whatever you receive from the underinsured motorist.

"SAFECO/First National voluntarily made higher limits of Uninsured Motorists Coverage (including Underinsured Motorists) available several years ago. You may have discussed this with your agent already. If you have not increased your limits, you may want to consider doing so now. Your SAFECO/First National agent will be happy to help."

On August 20, 1984, plaintiff, a member of her father's household, was injured by an uninsured motorist. An arbitrator awarded her damages of $37,090.50. Defendant paid the policy limits of $25,000 but refused to pay the balance of the award.

ORS 743.789(2) provides:

"The insurer issuing such [motor vehicle liability] policy shall offer one or more options of uninsured motorist coverage larger than the amounts prescribed [by the Financial Responsibility Law] up to the limits provided under the policy for motor vehicle bodily injury liability insurance. Offers of uninsured motorist coverage larger than the amounts required by [the Financial Responsibility Law] shall include underinsurance coverage * * *."

We have discussed the legislature's requirement that motor vehicle liability insurers "offer" uninsured motorist coverage to their insureds in three cases. In *White v. Safeco Insurance Co.*, 68 Or App 11, 680 P2d 700, *rev den* 297 Or 492 (1984), we held that the statute imposes an affirmative duty on insurers expressly to offer uninsured motorist coverage to their insureds. We analyzed the requirements of ORS 743.789(2) this way:

"In order to construe ORS 743.789(2), we attempt to ascertain the intent of the legislature, and our threshold inquiry is the language of the statute itself. [Citation omitted.] 'Offer' has been defined to mean: 'To bring to or before; to present for acceptance or rejection; to hold out or to proffer; to make a proposal to; to exhibit something that may be taken or received or not.' Black's Law Dictionary 1233 (4th ed 1968). Requiring insurers to 'present for acceptance or rejection' uninsured motorist coverage up to the limits of an insured's liability coverage, suits the purpose of ORS 743.789, which is to require that insurers 'shall provide' uninsured motorist coverage for any policy issued for delivery in this state.

"Defendants argue that the legislature's failure to make

clear its intention to require insurance companies affirmatively to offer to its insureds uninsured motorist coverage up to the limits of their liability coverage demonstrates that the legislative intent was merely to require the companies to 'make available' additional uninsured motorist coverage. In the 1975 Legislative Assembly, HB 2997, which was to become Or Laws 1975, ch 390, *amending* ORS 743.789, in its original form employed the language 'make available.' The House Committee On Labor/Business Affairs changed the language from 'make available' to 'shall offer.' Additionally, the original bill only required insurers to offer uninsured motorists coverage in multiple limits of $50,000 and $100,000. The Senate eliminated that restriction and required insurers to offer coverage 'up to the liability limits provided for under the policy for motor vehicle bodily injury liability insurance.' These changes demonstrate the legislature's intent to provide Oregon drivers an affirmative choice whether to obtain more than minimum protection against uninsured motorists.

"We further note that, with respect to personal injury protection benefits, the legislature has chosen to use different language. ORS 743.820 provides: 'Nothing in ORS 743.800 to 743.835 is intended to prevent an insurer from providing more favorable benefits than the personal injury protection benefits described in ORS 743.800, 743.805 and 743.815.' Had the legislature intended only that insurers make available additional uninsured motorist coverage, it presumably would have done so expressly, as it did with respect to personal injury protection benefits. We conclude that the words 'shall offer' impose on insurers an affirmative duty to communicate to their insureds the availability of one or more options of uninsured motorist coverage up to the limits provided under the liability coverage in their policies." 68 Or App at 14.

In *Blizzard v. State Farm Automobile Ins. Co.,* 86 Or App 56, 738 P2d 983, *rev den* 304 Or 149 (1987), we held that the insurer had not satisfied its duty when it had communicated the offer as to other vehicles that the insured owned, but not as to the specific vehicle involved in the accident. We reaffirmed the rigorous definition of "offer." 86 Or App at 60-61. The insured knew that underinsured motorist coverage was available to the limits of his liability coverage, because he had bought it for other vehicles that the same insurer covered. We held, however, that the insurer's failure to make a specific offer on the vehicle in question was a failure to comply with the statute.

Most recently, in *Merkhofer v. Safeco Ins. Co.*, 95 Or App 340, 769 P2d 232, *rev pending* (1989), we held that a signed acknowledgment by the insured that "I have been offered Uninsured and Underinsured Motorist coverage with limits up to the Bodily Injury Liability limits. I have elected to purchase the limits shown on the Declaration page" was sufficient proof that the insured had made an offer that complied with the statute. 95 Or App at 342 n 3. *Merkhofer* adds nothing to *White* and *Blizzard,* because there is no information in the opinion concerning how the insurer made the offer that the insured expressly acknowledged receiving.

Neither the 1980 letter from the insurance agent to plaintiff's father nor the notice that defendant sent in 1982 satisfies the definition of "offer" in ORS 743.789(2) that we have established in our cases. Defendant does not seriously contend otherwise. Instead, it argues that we should adopt the "Minnesota test," which that state and some others use to interpret statutes similar to ours. One court has explained that test this way:

> "In *Hastings v. United Pacific Insurance Co.* (Minn. 1982), 318 N.W.2d 849, the Minnesota Supreme Court held that a statute requiring insurers to offer, *inter alia,* underinsured motorist protection required the insurer to meet a four-part test to comply with the statute's requirement: (a) [*sic*] If the offer is made in other than face to face negotiations, the notification process must be commercially reasonable; (2) the insurer must specify the limits of its optional coverages and not merely offer them in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverages; and (4) the insured must be advised that optional coverages are available for a relatively modest increase in premium." *Tucker v. Country Mutual Insurance Co.,* 125 Ill App 3d 329, 335, 465 NE2d 956 (1984).

Even if we were to adopt that test, which may not be inconsistent with our previous cases, defendant could not prevail. The 1980 letter did not specify available limits for *under*-insured motorist coverage, it did not explain the nature of *un*insured motorist coverage, and it said nothing about the cost of *under*insured motorist coverage. Therefore, it fails to meet the proposed test. The 1982 notice fails to inform plaintiff about the cost of either form of coverage, so it does not meet the fourth part of the proposed test. Even if we could

read the two communications together for the purpose of the statute—a doubtful proposition given the length of time between them and the absence of any cross-reference—it would not cure the defects, because neither writing mentions the cost of *under*insured motorist coverage.

■ To the extent that the trial court interpreted the documents as a matter of law, it did so properly. To the extent that it made findings of fact, they are supported by the record. Once it determined that defendant had failed to comply with ORS 743.789(2), it correctly read into the policy the coverage that defendant should have offered. *See Blizzard v. State Farm Automobile Ins. Co., supra,* 86 Or App at 61.

Affirmed.