Argued and submitted October 7, 1991, reversed and remanded April 22, reconsideration denied July 15, petition for review allowed September 29, 1992

(314 Or 391)

Linda Diane PIERCE,
*Appellant,*

*v.*

ALLSTATE INSURANCE COMPANY,
*Respondent.*

(90-1515-L-1; CA A67513)

829 P2d 1032

531

Kelly L. Andersen, Central Point, argued the cause for appellant. With him on the brief was Richard & Andersen, P.C., Central Point.

Craig D. Bachman, Portland, argued the cause for respondent. With him on the brief was Lane, Powell, Spears, Lubersky, Portland.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

Warren, P. J., dissenting.

## EDMONDS, J.

Plaintiff brought this declaratory judgment action to determine her rights under ORS 742.502[1] and an insurance policy issued by defendant to her as an insured. She appeals from a summary judgment for defendant. We reverse.

Plaintiff settled a claim against a tortfeasor for the tortfeasor's liability policy limits, which were less than her own bodily injury liability limits under defendant's policy. Defendant's policy has liability limits of $100,000 per person and uninsured motorist (UM) limits of $25,000. She seeks a declaration that defendant's policy's UM limits are $100,000, arguing that she is entitled to the higher limits because defendant failed to offer limits equal to her liability limits, as required by ORS 742.502. Defendant contends that it complied with the statute's requirements.

The facts are not in dispute. When plaintiff first purchased motor vehicle liability insurance from defendant, she insured a 1981 Datsun and a 1985 Ford under the same policy. In December, 1985, defendant offered plaintiff UM limits equal to her liability limits. Plaintiff did not accept that offer. In May, 1986, plaintiff dropped coverage of the Ford and, in September, 1986, began to insure a 1965 Chevrolet. In January, 1987, she dropped coverage on the Datsun and began to insure a 1986 Isuzu. Defendant did not make new offers of UM limits equal to the liability limits when it agreed

---

[1] At the time of the events underlying this action, the provisions of ORS 742.502 were numbered ORS 743.789. The legislature renumbered that provision in 1989, but did not alter its substance. We refer to the renumbered version. ORS 742.502 provides, in part:

"(2) The insurer issuing such policy shall offer one or more options of uninsured motorist coverage larger than the amounts prescribed to meet the requirements of ORS 806.070 up to the limits provided under the policy for motor vehicle bodily injury liability insurance. *Offers of uninsured motorist coverage larger than the amounts required by ORS 806.070 shall include underinsurance coverage* for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage. *Underinsurance benefits shall be equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies.*" (Emphasis supplied.)

In this opinion, our references to uninsured motorist limits include underinsured motorist limits.

to insure the Chevrolet or the Isuzu. At the time of the accident, defendant insured both vehicles.

■     Plaintiff initially argues that the substance of defendant's offer of UM coverage in 1985 was commercially unreasonable and inadequate to satisfy its duty under *White v. Safeco Insurance Co.*, 68 Or App 11, 680 P2d 700, *rev den* 297 Or 492 (1984). The offer provided:

> "UNINSURED MOTORISTS LIMITS EQUAL TO YOUR BODILY INJURY LIMITS ARE OFFERED TO YOU AT THE FOLLOWING PRICES
> VEH 1 $13.00     VEH 2 $11.10
> SEE ENCLOSED COVERAGE UPDATE DESCRIBING THIS OFFER AND HOW TO ACCEPT OR REJECT IT OR OBTAIN OTHER AVAILABLE LIMITS."

Defendant placed that offer on a declarations sheet that was included with a renewal notice sent to plaintiff. The coverage update, which was also included with the renewal notice, informed plaintiff of the nature of UM insurance and the availability of UM limits equivalent to her liability limits. It also informed her how to obtain additional information about the coverage and provided her with an easy means to accept the coverage. We hold that defendant's offer was commercially reasonable. *See Blizzard v. State Farm Automobile Ins. Co.*, 86 Or App 56, 59, 738 P2d 983, *rev den* 304 Or 149 (1987).

■     Next, plaintiff argues that, under ORS 742.502(2), defendant had the duty to make an offer of UM coverage equal to her liability limits every time that it insured a different vehicle. Therefore, she asserts that defendant had a duty to make a new offer when she procured coverage on the Chevrolet and when she procured coverage on the Isuzu. Defendant argues that its 1985 offer satisfied the requirement of ORS 742.502(2), because the later acquired vehicles were covered by the same policy that covered the Datsun and the Ford.

■ ■     ORS 742.502 imposes an affirmative duty on an insurer to offer uninsured motorist coverage up to the limits of the liability coverage in the policy. *White v. Safeco Insurance Co., supra.* The issue is what event triggers that duty. The duty is triggered when an insurer issues a new policy or covers a new risk. No new offer is required when coverage is renewed on the same vehicle. *Wood v. State Farm Mutual*

*Automobile Ins. Co.*, 100 Or App 576, 580, 787 P2d 504, *rev den* 310 Or 133 (1990). In *Blizzard v. State Farm Automobile Ins. Co., supra*, we held that a new offer was required when there was coverage of a new risk, *i.e.*, a newly insured vehicle. In that case, the defendant, at the plaintiffs' request, had suspended all coverages on the vehicle except the comprehensive. After the plaintiffs took the car out of storage, they requested reinstatement of full coverage. We concluded that, because the defendant "did not present a specific offer which [the] plaintiffs could accept or reject on the insurance for the [vehicle]," it had not complied with the statute as to that car. 86 Or App at 61.

■        Here, the applicable statutes and the policy tell us what events constitute coverage of a new risk. As part of the section on requirements of uninsured motorist coverage, ORS 742.500 *et seq*, ORS 742.504(2)(b)(A) defines an "insured vehicle" as:

> "The vehicle described in the policy or a *newly acquired or substitute vehicle, as each of those terms is defined in the public liability coverage of the policy,* insured under the public liability provisions of the policy." (Emphasis supplied.)

ORS 742.502(2) is part of the same statutory scheme. We construe statutes on the same subject as consistent and in harmony with one another, when that is possible. *Davis v. Wasco IED,* 286 Or 261, 267, 593 P2d 1152 (1979).[2] We read ORS 742.504(2)(b)(A), with ORS 742.502(2), to mean that the notice requirement of ORS 742.502(2) is triggered when a "newly acquired or substitute vehicle" is insured as a new risk under the language of the policy.

Defendant's policy provides, in part:

### " Duty to Report Autos

"**You** must notify **us** within 60 days when **you** acquire an additional or replacement **auto.** If **you** don't, certain coverages of this policy may not apply." (Bold face in original.)

---

[2] In *Davis*, the court said:

> " 'A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole. Thus it is not proper to confine interpretation to the one section to be construed.' " 286 Or at 267 (quoting 2A Sands, *Sutherland Statutory Construction* 56, § 46.05 (4th ed 1973)).

"Part III Uninsured Motorists Insurance Coverage SS" of the policy[3] defines an "insured auto":

**"An insured auto is a motor vehicle:**

"**(1)** described on the declarations page, and the **motor vehicle you** replace it with.

"**(2) you** acquire ownership of during the premium period. This additional **motor vehicle** will be covered if **Allstate** insures all other private passenger **motor vehicles you** own. **You** must, however, notify **Allstate** within 60 days after **you** acquire the **motor vehicle** and pay any additional premium." (Bold face in original.)

Under the policy, the insured must procure additional coverage for a newly acquired vehicle after 60 days. The policy deems the coverage of a newly acquired vehicle to constitute coverage of a new risk.

When plaintiff first purchased insurance from defendant in 1985, she insured two vehicles, a 1981 Datsun and a 1985 Ford. Because she dropped coverage for the Ford in May, 1986, plaintiff was billed for only one car, the 1981 Datsun. Effective in September, 1986, defendant *added* a 1965 Chevrolet to the policy and was charged an additional premium. Under the policy, the *addition* of the Chevrolet as a covered risk constituted coverage of a new risk. Because defendant failed to offer the higher coverage when the Chevrolet was added, it did not comply with ORS 742.502 and plaintiff is entitled to a declaration that her UM limits are $100,000.

The dissent worries that our holding allows insurers to control when "insureds are informed about UM coverage," which "would not promote the purpose" of ORS 742.502(2). 112 Or App at 536. As we have said, the duty arises when an insurer issues a new policy or covers a new risk with an

---

[3] "Part I - Automobile Liability Insurance" provides, in part:

"**Insured Autos**

"**(1)** Any **auto** described on the declarations page and the four wheel private passenger **auto** or **utility auto you** replace it with.

"**(2)** An additional four wheel private passenger **auto** or **utility auto you** acquire ownership of during the premium period. This **auto** will be covered if **we** insure all other private passenger **autos** or **utility autos you** own. **You** must, however, notify **us** within 60 days of acquiring the **auto** and pay any additional premium." (Bold face in original.)

existing policy. The legislature permits the insurer to define in its policy a "newly acquired or substitute vehicle" to meet the requirements of uninsured motorist coverage. ORS 742.504(2)(b)(A). Our holding does no more than tie the notification requirement in ORS 742.502(2) to the other statutory requirements regarding uninsured motorist coverage.

Defendant's other arguments do not require discussion.

Reversed and remanded.

**WARREN, P. J.,** dissenting.

The majority concludes that an insurer must make the offer of UM coverage mandated by ORS 742.502(2) whenever the insurer covers a new risk. It then states that that event is determined by consulting the language of the policy. Because the legislature did not intend that insurers control when insureds are to be informed about the availability of UM coverage, and because the majority's rule would not promote the purpose of the notice requirement, I dissent.

The purpose of the offer mandated by ORS 742.502(2) is to apprise an insured of the right to choose UM limits equivalent to the insured's liability limits. *Wood v. State Farm Mutual Ins. Co.*, 100 Or App 576, 580, 787 P2d 504 (1990). To further that objective, ORS 742.502(2) requires insurers to make the mandated offer whenever an insured selects liability limits that are higher than the policy's UM limits. That, essentially, was the basis of our decision in *Blizzard v. State Farm Automobile Ins. Co.*, 86 Or App 56, 61, 738 P2d 983, *rev den* 304 Or 149 (1987).

In *Blizzard*, the plaintiffs insured three vehicles with the defendant insurer. After the legislature enacted ORS 742.502(2), the insurer offered UM limits equivalent to the liability limits for two of the plaintiffs' vehicles. However, it did not make that offer for the third vehicle, because, at the time, the plaintiffs carried no liability insurance on that vehicle. Subsequently, the plaintiffs added liability insurance on the third vehicle. However, the insurer did not offer UM limits equivalent to the liability limits. After that vehicle was struck by an uninsured motorist, the plaintiffs sought a

declaration that the policy contained the higher UM limits. The trial court reformed the policy as requested, and we affirmed, stating that

"defendant did not present a specific offer which plaintiffs could accept or reject on the insurance for the [third vehicle]. As a result, it did not comply with the statute as to that [vehicle]." 86 Or App at 61.

When the insureds in *Blizzard* added liability coverage, they selected an amount in excess of the amount that they had selected for UM coverage. By holding that the insurer was required to make the offer mandated by ORS 742.502(2) at that time, our decision supports the rule that insurers must make that offer whenever an insured selects liability limits that are higher than the policy's existing UM limits.

The majority cites *Blizzard* for the proposition that insurer must make the offer mandated by ORS 742.502(2) whenever it covers a new risk. Because that event is determined by consulting the insurer's policy, each insurer would determine when, or if, a re-offer of UM insurance is required by defining what constitutes acceptance of a new risk in its policy. Accordingly, under the majority's rule, some insureds will receive offers when certain events occur or circumstances change, while others insured with a different carrier may not, simply because different insurers use different policy forms. Because that result would be inconsistent with the concept of mandated coverage, the majority's rule could not have formed any part of the basis of our decision in *Blizzard*.

Mandated coverage is intended to insure that, at some minimum level, all insureds are equal with respect to all aspects of a particular form of coverage. Under the majority's rule, all insureds will not be treated equally with respect to offers of UM coverage, unless all insurers use the same policy form. Because the legislature made UM coverage compulsory, ORS 742.502(1), we should not employ a strained interpretation of the statutes to impute to it an intent to permit insurers to determine when insureds are entitled to certain statutory benefits.

When the insurer offered plaintiff UM limits equal to her liability limits the last time that she selected higher

liability limits, it satisfied its duty under ORS 742.502(2) and was not required to make that offer again. Accordingly, plaintiff was not entitled to the higher limits, and the trial court properly granted the summary judgment.

I dissent.