Argued and submitted July 6, 1998, affirmed January 13, 1999

Patricia SAVAGE,
personal representative of the Estate of
Tony Lee Savage, deceased,
*Respondent,*

*v.*

GRANGE MUTUAL INSURANCE COMPANY,
an Oregon non-profit corporation,
*Appellant.*

(97C-10434; CA A99325)

970 P2d 695

Thomas M. Christ argued the cause for appellant. With him on the briefs was Mitchell, Lang & Smith.

J. Michael Alexander argued the cause for respondent. With him on the brief was Burt, Swanson, Lathen, Alexander, McCann & Smith, P. C.

Before De Muniz, Presiding Judge, and Deits, Chief Judge, and Haselton, Judge.

HASELTON, J.

## HASELTON, J.

Defendant insurer, Grange Mutual Insurance Company, appeals a judgment requiring it to pay up to $1 million in underinsured motorist (UIM) coverage under an umbrella liability policy. The sole issue on appeal is whether ORS 742.468,[1] which became effective after defendant issued the umbrella policy but before the underlying accident, precludes recovery of UIM benefits. We conclude that it does not, and affirm.

The material facts underlying this declaratory judgment action are substantially undisputed: On July 1, 1993, defendant issued two insurance policies—one primary automobile policy and one umbrella policy, which included auto liability coverage—to Tony Lee Savage and his wife, Patricia, the plaintiff in this action. At that time, defendant offered, and the Savages accepted, $250,000 in UIM coverage under the auto policy. Under the then-applicable version of ORS 742.502(2) and our decision in *American Economy Ins. Co. v. Canamore*, 114 Or App 348, 834 P2d 542, *rev den* 314 Or 727 (1992), defendant was also obligated to offer the Savages UIM coverage under the *umbrella* liability policy. However, defendant never did so. Nor did defendant otherwise change or amend the umbrella policy after it was issued.

On November 1, 1993, ORS 742.468 became effective. As described below, that statute exempted umbrella liability policies from the requirement of certain statutes "mandating kinds or amounts of coverage" in auto liability policies.

On July 1, 1994, defendant renewed the Savages' umbrella policy for the policy period July 1, 1994, through July 1, 1995. On October 24, 1994, after that renewal, Tony Lee Savage was killed in an automobile accident caused by an underinsured motorist.

---

[1] ORS 742.468 provides, in part:

"For the purpose of statutes mandating kinds or amounts of coverage that motor vehicle liability policies must contain, the following shall not be considered motor vehicle liability policies:

"* * * * *

"Umbrella liability policies."

Plaintiff, as the personal representative of her husband's estate, collected the available policy limits on the tortfeasor's liability policy and an additional $150,000 under the auto policy's UIM coverage.[2] Plaintiff then made a claim for UIM benefits under the umbrella policy. Defendant denied that claim, asserting that the policy, as written, provided no UIM coverage. That denial led plaintiff to file this action, seeking a declaration that she was entitled to UIM benefits under the umbrella policy, up to the policy's $1 million liability limits.

The parties filed cross-motions for summary judgment on the coverage issues. Plaintiff argued that under the law existing at the time the policy was executed, *see American Economy Ins. Co.,* 114 Or App at 352, defendant was obligated to have offered the Savages UIM coverage up to the umbrella policy's limits; that defendant failed to do so; and that, because of that breach, the policy, as a matter of law, included $1 million in UIM coverage. Defendant asserted that, notwithstanding its failure to offer UIM coverage when it *issued* the umbrella policy, entitlement to such coverage must be based on the insurer's breach of a legal obligation *existing at the time the underlying casualty occurred.* Defendant thus reasoned that, because ORS 742.468, which abrogated the duty to offer UIM coverage under umbrella policies, was enacted before the fatal accident, there was no such coverage here. The trial court adopted plaintiff's analysis, and defendant appeals.

This appeal turns on the interplay between an insurer's obligations under ORS 742.502(2) (1991) and the subsequent enactment of ORS 742.468. In July 1993, when defendant issued the umbrella policy, ORS 742.502 (1991) provided, in part:

"(1) *Every motor vehicle liability policy* insuring against loss suffered by any natural person resulting from liability imposed by law for bodily injury or death arising out of the ownership, maintenance or use of a motor vehicle shall provide uninsured motorist coverage therein or by indorsement thereon when such policy is * * *:

---

[2] The $150,000 represented the primary automobile policy's UIM limit ($250,000) minus the $100,000 received under the tortfeasor's liability coverage.

"(a)   Issued for delivery in this state * * *

"* * * * *

"(2)   The insurer issuing such policy *shall offer* one or more options of uninsured motorist coverage * * * up to the limits provided under the policy for motor vehicle bodily injury liability insurance. *Offers of uninsured motorist coverage * * * shall include underinsurance coverage * * *.*"[3] (Emphasis added.)

In *American Economy Ins. Co.*, we construed "every motor vehicle liability policy" in ORS 742.502(1) to encompass umbrella liability policies as well as standard motor vehicle liability policies. 114 Or App at 358. Consequently, insurers who issued umbrella policies were required to comply with ORS 742.502(2) by offering additional UIM coverage up to the umbrella policy's liability limits. *Id.*

Earlier, in *Blizzard v. State Farm Automobile Ins. Co.*, 86 Or App 56, 61, 738 P2d 983, *rev den* 304 Or 149 (1987), we had addressed the consequence of an insurer's breach of its statutory duty to offer UIM coverage. There, we concluded that "the appropriate remedy for defendant's failure to comply with its statutory duty is to read into the insurance contract the coverage which defendant should have offered." *Id.* at 61. In so holding, we relied on, and quoted with approval, decisions from other jurisdictions to the same effect. *See Tucker v. Country Mutual Insurance Co.*, 125 Ill App 3d 329, 337, 465 NE2d 956 (1984); *Kuchenmeister v. Ill. Farmers Ins. Co.*, 310 NW2d 86, 88 (Minn 1981).

Thus, at the time defendant issued the umbrella policy to the Savages: (1) defendant had a statutory duty to offer UIM coverage up to the umbrella policy's liability limits; (2) defendant breached that duty; and (3) the remedy for that breach was to impute UIM coverage up to the liability limits.

On November 1, 1993, after the issuance of the umbrella policy and before the fatal accident, ORS 742.468 became operative.[4] That statute provides, in part:

---

[3] ORS 742.502 has been subsequently substantially amended to delete the "offer" requirement of subsection (2) in favor of a "waiver" approach by which the policy is deemed to include UIM coverage unless the insured expressly elects otherwise. *See* Or Laws 1993, ch 709, § 11.

[4] *See* Or Laws 1993, ch 709, § 14.

"For the purpose of statutes mandating kinds or amounts of coverage that motor vehicle liability policies must contain, the following shall not be considered motor vehicle liability policies:

"* * * * *

"Umbrella liability policies."

Thus, under ORS 742.468, insurers who issued umbrella policies after November 1, 1993, were not required to comply with the requirements of ORS 742.502(2) (1991), or any other statutory provision that mandated kinds or amounts of motor vehicle liability coverage. ORS 742.468 does not explicitly address whether, or to what extent, it applies to previously issued umbrella policies, including umbrella coverage renewed after the statute's effective date.

Defendant does not dispute that, at the time it issued the umbrella policy, it breached a then-existing statutory duty to offer UIM coverage. Defendant argues, however, that that breach does not warrant imputation of UIM coverage here:

"Failure to offer UIM coverage, as required by ORS 742.502(2) (1991), did not create an immediate right to such coverage. Reformation of the policy, to create that coverage, was, instead, a judicial remedy for injury caused by breach of the statutory duty, which injury did not arise until the insured was in an accident with an underinsured motorist. In this case, the accident occurred in November 1994, more than a year after the enactment of ORS 742.468, which ended defendant's duty to offer UIM coverage under this umbrella policy. Accordingly, reformation is not an available remedy."

Thus, defendant's argument rests on two related propositions. First, UIM coverage was not imputed, as a matter of law, upon issuance of the umbrella policy. Rather, plaintiff merely had a right to seek reformation that (1) remained inchoate until a claim was actually made and (2) ultimately depended on the insurer's statutory obligations *at the time of the casualty*. Second, and consequently, the enactment of ORS 742.468 after the issuance of the policy and before the accident abrogated any entitlement to reformation.

Plaintiff's position, not surprisingly, is the obverse of defendant's:

"The rights and obligations of the parties, as they relate to this issue, were fixed as of the date that the policy was issued. * * * The passage of ORS 742.468 is thus irrelevant unless it can be construed to retroactively modify the existing contract between the parties, and similarly retroactively nullify the Defendant's statutory obligation at that time. Under basic principles of construction, it can not have such effect."

Thus, in plaintiff's view, entitlement to UIM benefits immutably "vested" at the time the policy issued.

■ We begin by examining defendant's first premise: Did defendant's breach of its then-existing statutory obligation to offer UIM coverage automatically confer *coverage* as of the date of issuance, or did it merely confer a right to *seek reformation*, with the entitlement, if any, to that remedy being conditioned on the insurer's legal obligations existing at the time the underlying casualty occurs? That, in turn, requires us to consider the exact nature of the relief conferred in *Blizzard* and its progeny.

In *Blizzard*, in concluding that the defendant insurer's breach of its statutory duty to offer UIM coverage warranted the imputation of such coverage, we rejected the insurer's argument that the plaintiff insureds were not entitled to UIM coverage because they had not proved that they would have purchased such coverage if it had been offered:

"The Minnesota Supreme Court, confronted with the same argument, said that

" 'when the trial court determines that the statutorily mandated offer of insurance has not been made, that coverage is implied in law as included in the insured's policy at the time of the accident. * * * The insurer has no right to a jury trial to determine whether the insured would have purchased the coverage. Not only would that determination be too speculative, it would allow insurers to circumvent the intent of the legislature.' *Kuchenmeister v. Ill. Farmers Ins. Co.*, 310 NW2d 86, 88 (Minn 1981).

*"See also Tucker v. Country Mutual Insurance Company*, 125 Ill App 3d 329, 337, 465 NE2d 956 (1984). We agree with the Minnesota and Illinois courts that the appropriate remedy for defendant's failure to comply with its statutory duty is to read into the insurance contract the coverage which defendant should have offered. That is what the trial court did, and we affirm its decision." 86 Or App at 61.

Thus, *Blizzard* itself did not refer to "reformation." Nor did *Blizzard* mention, much less analyze, the well-established requisites for reformation of insurance policies under Oregon law. *See, e.g., Frontier Ins. v. Hartford Fire Ins.*, 262 Or 470, 477, 499 P2d 1302 (1972) ("Reformation, strictly speaking, is equitable relief which is appropriate when a writing, because of fraud or mutual mistake, incorrectly expresses the true intention of the parties."); *Avemco Ins. Co. v. Hill*, 76 Or App 185, 189, 708 P2d 640 (1985) ("If the coverage under the binders did not conform to the contracting parties' intents, plaintiffs' proper remedy was reformation."). Rather, *Blizzard* explicitly adopted the analysis of the Minnesota Supreme Court in *Kuchenmeister* and the Illinois Court of Appeals in *Tucker*.

In *Kuchenmeister*, the court, as noted, held that the "coverage is *implied in law* as included in the insured's policy at the time of the accident." 310 NW2d at 89 (emphasis added).[5] *Kuchenmeister* was, in turn, predicated on *Holman v. All Nation Ins. Co.*, 288 NW2d 244, 250 (Minn 1980), which held that, because the insurer breached its statutory duty to offer UIM coverage, "we, therefore, read [the] optional coverage[ ] into the *Holman* policy *by operation of law*." (Emphasis added.) Finally, and similarly, the Illinois court in *Tucker* "impl[ied UIM] coverage in plaintiff's policy *by operation of law*." 465 NE2d at 962 (emphasis added).

---

[5] Although *Kuchenmeister* states that "coverage is implied in law as included * * * at the time of the accident," 310 NW2d at 88, nothing in that opinion suggests that coverage does not, in fact, arise upon issuance of the policy. Rather, read in context, the court's "time of the accident" language merely tracks the declaratory relief that the insured had requested:

"Insured instituted a declaratory judgment action seeking a determination that the insurer failed to make the statutorily required offer of underinsured motorist coverage to insured and that, as a result, the insured had in effect at the time of the accident underinsured motorist coverage * * *." 310 NW2d at 87.

None of those cases referred to reformation. Each spoke only of imputing UIM coverage by operation of law. *See* Alan I. Widiss, 3 *Uninsured and Underinsured Motorist Insurance*, § 32.6, 43-44 (2d ed 1998) (contrasting those jurisdictions in which the insurer's breach of duty to offer UIM coverage results in such coverage being "imposed by operation of law" with those jurisdictions that conclude "that reformation of an insurance policy is an appropriate means of making the coverage part of the insurance contract").

In post-*Blizzard* cases, we have, on occasion, reiterated *Blizzard's* precise formulation. *See Zuber v. Safeco Ins. Co.*, 96 Or App 596, 602, 773 P2d 800 (1989) ("Once [the trial court] determined that defendant had failed to comply with [the statutory antecedent to ORS 742.502(2)], it correctly read into the policy the coverage that defendant should have offered."); *Taylor v. Oregon Insurance Guaranty Assoc*, 99 Or App 554, 557, 783 P2d 49 (1989), *rev den* 309 Or 522 (1990) ("The result of the failure of an insurer to offer such coverage is that the court will 'read into the insurance contract the coverage which [the insurer] should have offered.'" (quoting *Blizzard*)). Conversely, in *American Economy Ins. Co.*, we used the term "reformed" once: "Therefore, plaintiff's failure to offer UIM coverage means that the policy must be reformed to provide UIM benefits in the amount of the policy's bodily injury limits." 114 Or App at 352. However, that case does not engage in a classic reformation analysis; instead, the single reference to "reformed" appears to have been merely shorthand for the imputation of coverage.[6] *Cf. Van Vonno v. Hertz Corp.*, 120 Wash 2d 416, 841 P2d 1244, 1247 (1992) (applying Oregon law: "The remedy for failure to comply with ORS 742.502(2) is reformation of the insurance contract to include uninsured motorist coverage up to the same limits as the liability protection.").

We thus conclude that, under *Blizzard*, the insured's breach of its statutory duty to offer UIM coverage does not

---

[6] *Canamore* was a declaratory judgment action, as was *Blizzard*. In *Zuber*, the insureds brought an action on the policy for nonpayment of UIM benefits. In *Beck v. Powell*, 113 Or App 318, 832 P2d 1254, *rev den* 314 Or 175 (1992), the insureds did bring an action for reformation. In affirming the judgment for the defendant insurer, we did not address the availability or propriety of reformation in this context.

merely give rise to some inchoate entitlement to seek reformation but, instead, results in the imposition of UIM coverage *ab initio* by operation of law. That conclusion not only comports with *Blizzard*'s language and the analysis of the cases that *Blizzard* invokes, but it is also consistent with analogous, albeit not precisely controlling, statutory authority. *See* ORS 742.038(2) ("Any insurance policy issued and otherwise valid which contains any condition, omission or provision not in compliance with Insurance Code * * * shall be construed, and applied in accordance with such conditions and provisions as would have applied had such policy been in full compliance with the Insurance Code."). *Cf. Hansen v. Western Home Ins. Co.*, 89 Or App 68, 71-73, 747 P2d 1007 (1987), *rev den* 305 Or 576 (1988) (applying statutory antecedent to ORS 742.038(2)).[7]

■ Defendant argues, nevertheless, that the subsequent enactment of ORS 742.468, which became "operative" before the umbrella policy's renewal, precluded UIM benefits. We note, as an initial matter, that, under *Pierce v. Allstate Ins. Co.*, 316 Or 31, 848 P2d 1197 (1993), the fact that the umbrella policy was renewed after the statute's effective date is, by itself, immaterial to the insurer's statutory obligation. In *Pierce*, the court held that the statutory obligation to offer UIM coverage applied only to the initial issuance of the policy and not to subsequent renewals. *Id.* at 38. In so holding, the court emphasized that "[t]he statutory scheme * * * makes clear that the renewal of a motor vehicle liability

---

[7] In asserting that coverage cannot be imposed *ab initio*, defendant relies on certain language from *Taylor*:

"Under *Blizzard* * * * the coverage that should have been offered is read into the policy, as if it had been included when the accident occurred. Therefore, the limits of coverage are treated as being in effect when the accident occurred and fall within the definition of a covered claim." 99 Or App at 559 (citations omitted).

Defendant's reliance on that language is misplaced in that it is taken out of context. The precise issue we addressed in *Taylor* was whether the plaintiff insureds had presented a "covered claim," which is a term of art under the insurance guaranty statutes, ORS 734.510(4)(a). *See* 99 Or App at 558-59. The focus of *that* analysis was whether the enhanced coverage was in effect at the time of the accident, as opposed to *never* being in effect. That is, the dispute in *Taylor* was not coverage *ab initio* versus reformation at the time of the claim; rather, it was whether there was coverage, through any device, by the time the accident occurred. In answering that question in the affirmative, we had no need to consider, much less decide, whether coverage arose upon contract formation.

policy does not constitute the issuance of a new policy." *Id.* at 36.[8]

■  Thus, our inquiry reduces to whether the enactment of ORS 742.468 had the effect of abrogating existing UIM coverage under plaintiff's umbrella policy. We conclude that it did not. Nothing in the text, context, or legislative history of ORS 742.468 suggests that the legislature intended that that statute alter or eliminate existing coverage obligations. That silence is in direct contrast to the concurrently enacted amendments to ORS 742.502(2), *see* 158 Or App at 89-90, which were included in the same act and which explicitly provided that they applied "to policies issued after July 1, 1994 and apply upon the first renewal after July 1, 1994, of a policy issued prior to that date." Or Laws 1993, ch 710, § 12. The legislature thus quite consciously provided that the amendments to ORS 742.502 would apply to renewals of existing policies but did not do so with respect to ORS 742.468. We conclude that ORS 742.468 applies solely to policies issued after its effective date.[9]

We note, finally, that defendant contends that the construction of ORS 742.468 that plaintiff espouses, and that we have adopted, will result in a parade of horribles:

"Suppose that, before [ORS]742.468 took effect, an insurer issued an umbrella policy without offering UIM coverage. The next day, the insurer caught the mistake and offered to amend the policy to provide such coverage retroactively, but the insured, for one reason or another, declined the offer, perhaps because he didn't want to pay the additional premium. Later, the insured was injured in an accident with an underinsured motorist. In this scenario, the insured's injury, an underinsured loss, would not

---

[8] Because of *Pierce*, defendant's reliance on *Hauer v. Integrity Mut. Ins. Co.*, 352 NW2d 406 (Minn 1984) is unavailing. In *Hauer*, the court refused to impute UIM coverage under facts substantially similar to those presented here—*i.e.*, at the time the original policy was issued, the statute required an offer of UIM coverage and the insurer breached that statutory duty; however, before the fatal accident, the legislature repealed the statutory obligation, and the policy was renewed after that repeal. Central to the Minnesota court's ruling was its premise that, upon renewal, "an entirely new and independent contract of insurance is created and governed by the laws in effect on the date of renewal." *Id.* at 408. *Pierce* flatly contradicts that premise.

[9] Given that conclusion, we do not reach plaintiff's contention that application of ORS 742.468 as defendant urges would effect an unconstitutional impairment of contract.

have been caused by the insurer's breach of the duty to offer UIM coverage. And yet, under plaintiff's theory, the insured would still be entitled to obtain benefits *under the very coverage he turned down*, because under the theory, coverage would have been created automatically when the policy was issued and thus would have been in force when the accident occurred." (Emphasis in original.)

Even if that scenario was correct—and we express no view as to whether it is—the result we reach is compelled by statute and precedent.

Affirmed.